CHAMPION and others *against* BROWN and BROWN.

Where there is a contract for the purchase of land, it descends, in equity, to the *heirs* of the vendee, as real estate; and they may call on the executors or administrators to discharge the contract out of the personal estate of the vendee, so as to enable the heirs to demand a conveyance from the vendor.

The administrators of the vendee cannot assign the contract, or compel its performance, without the consent of the heirs.

Where the vendee assigns the contract, and the assignee takes possession of the land, the vendor, though he cannot compel the assignee to pay the purchase money, yet he may, by virtue of his *lien* on the land, call on him to pay the money, or to surrender the possession of the land, or to have it sold for the benefit of the vendor.

Where the administrators of the vendee assigned a contract, for the purchase of land, to the defendants, who covenanted and agreed to take up and cancel the contract, and to *indemnify*, and save harmless, the administrators, from all damages, &c., which they might sustain, by reason of the contract, &c.: *Held*, that the administrators were entitled to a specific performance of the covenants, on the part of the defendants, who could not set up a want of personal assets, as an objection, *in limine*, to the relief sought by the bill.

*October 23d.*     THE bill was filed, *December* 10, 1821, by *Henry Champion*, and *William L. Storrs*, and the administrators and heirs of *John Paddock*, deceased, against the defendants, *John B.* and *Jacob B.*, for the specific performance of a contract, made the 29th of *August*, 1816, by which *Henry C.* and *Lemuel Storrs*, agreed to sell and convey to *J. P.* 952 acres of land, &c., for the sum of 8000 dollars; 500 dollars to be paid in cash, and the residue in six equal annual instalments, with interest annually. *J. P.* died intestate *November* 16, 1816, and his administrators and heirs, being unable to perform the contract, for want of personal assets, on the 1st of *June*, 1818, entered into an agreement with the defendants, by which the defendants

covenanted and agreed, "that they would take up and cancel" the contract made between *C. & S.* and *Paddock*, &c., by the first day of *August* then next, or, in case *Champion*, the survivor of *Storrs*, should refuse to give up and cancel the said contract, then the defendants covenanted to *indemnify, and save harmless,* the administrators of *P.*, &c., from all damages, costs, charges, and expenses, which they might sustain, or be put to, on account of the claims, covenants, and agreements, in the said agreement contained, &c. The administrators of *P.* covenanted, in their individual capacities, to pay to the defendants all moneys owing to them from *J. P.*, deceased, stating how the payments were to be made; and they were to allow, as part payment, the 500 dollars paid by *P.* to *C. & S.*, and endorsed on the contract; "and, also, the amount of the improvements, appraised by *Loomis* and *Lord.*" At the time of this agreement, the administrators of *P.* assigned the contract between him and *C. & S.* to the defendants.

*L. Storrs* died intestate, and, in the distribution and settlement of the estate, all his interest in the contract became vested in the plaintiff, *William L. Storrs.* Soon after the agreement between the defendants and the administrators of *P.*, the former entered and took possession of the land, and have since continued in possession, exercising ownership, receiving rents, cutting timber, &c. But they have made no payments, nor taken up the contract between *P.* and *C. & S.*, but the representatives of *P.* still remain liable to be sued upon it. The bill *prayed* for a discovery, and that the defendants may be decreed specifically to perform the contract between *C. & S.* and *P.*, according to the true intent of the agreement between the defendants and *P.*, and for their indemnity, the heirs offering to ratify and confirm the conveyance of the land to the defendants, in fee, &c., and for general relief.

The defendants demurred to the bill, as to a discovery, and as to the specific performance prayed, on the follow-

ing grounds : Because, it does not appear that there is, or has been, any *privity* between the plaintiffs, or either of them, and the defendants, or between the defendants and *Champion*, and *L. Storrs ;* and because, it does not appear that the administrators of *P.* had any power to sell or assign the contract, or the land described in it ; and because, the plaintiffs have not shown such a case as will entitle them to relief in this Court, &c. ; and because, it does not appear that the administrators of *P.* have or claim any interest in the contract or the land ; nor that they have been, or can be, damnified by reason of the contract not being cancelled; and, as regards the heirs of *P.*, because, the plaintiffs have not shown a case entitling them to relief in this Court, as against those defendants, &c.

*N. Williams,* and *D. Cady,* in support of the demurrer. They cited 1 *Madd. Ch.* 477, 478. 2 *Bro.* 101. 152. 604. 5 *Ves.* 534. 3 *Johns. Ch. Rep.* 252. 257. 267. 2 *Johns. Ch. Rep.* 274. 4 *Johns. Ch. Rep.* 559. 3 *Johns. Ch. Rep.* 316. 3 *Atk.* 383. 713. 712. 10 *Mod.* 528. 14 *Viner,* tit. *Heir,* 285. *U.* pl. 20. 21. 1 *Fonbl. Equ.* 397. *Shep. Touchst.* 131. 134. 175. 9 *Johns. Rep.* 39. 2 *Powell on Cont.* 16, 17. 1 *Fonbl.* 13. 150. 149. 219.

*Henry,* contra. He cited *Newland on Cont.* 92. 93. 1 *Vernon,* 189. 1 *Bro.* 52. 3 *Atk.* 384, 385. 10 *Ves.* 159.

THE CHANCELLOR. (1.) The first and leading question is, whether the bill can be sustained by *Champion* and *Storrs,* as vendors, against the defendants, claiming by purchase under the vendee.

The title in law never passed out of the vendors, though in equity, by virtue of the agreement to sell, the estate was in the vendee, and was in him transmissible by descent, and devisable by will.

The covenant, on the part of the defendants, was in the alternative; it was, that they would take and cancel the contract that *Paddock* had made with the vendors, by the first day of *August* thereafter, or, in case of the refusal of *C*. and *S*. to give up and cancel it, they would indemnify and save harmless the administrators of *P*. from all damages and costs to arise by reason of his covenants. The bill does not state, distinctly and affirmatively, any specific breach of these covenants on the part of the defendants. It may be inferred from the bill, that *C*. and *S*. refused to give up their contract with *P*., because the bill is silent on the subject of demand, and consent or refusal, and claims a specific performance of that contract. There is no breach assigned as to this part of the alternative, and it is not averred, that the administrators have sustained any damage from the breach of the covenants of their intestate. There has been no demand made upon them, or suit brought against them for non-payment of the instalments. Such a suit would have been useless, if another averment in the bill be true, which is, that there are no assets, real or personal, by which they could be enabled to perform the covenants of *Paddock*.

The defendants purchased the contract from the administrators of *P*. after non-payment of the first instalment, and before the second instalment became due, and they took possession of the land, and have exercised various acts of ownership over it, and made great havoc of the timber, but have made no payments on the first contract, or taken it up. The prayer of the bill is, that they be decreed to perform *Paddock's* contract, according to their covenant with his administrators. But, strictly, and in terms, they have not broken their covenants with the administrators; and the only ground upon which, as it appears to me, that the bill can be sustained *on the part of the plaintiffs, C*. and *S*., is, that the defendants took the land, subject to the lien that the vendors had upon it under the contract with

CHAMPION
v.
BROWN.

*Paddock.* It is not to be supposed that *C.* and *S.* can sustain the bill on the personal covenants from *P.* to them. There was no privity or communication between *C.* and *S.*, and the defendants. The latter are under no personal engagement to the vendors, and if they are liable to *C.* and *S.*, it is only in respect to the estate in their possession.

I do not perceive the authority under which the administrators assigned the contract of *P.*, and it may be doubted whether the defendants were entitled to fulfil the original contract, and could compel a deed from *C.* and *S.*, without the valid assent of the heirs of *P.*, to whom the benefit of his contract belonged. In equity, the land contracted for descended to them as real estate, and they were entitled to call upon the administrators to discharge the contract out of the proceeds of the personal estate, (if any there were,) so as to enable the heirs to demand and receive a deed. But, admitting the contract to have been duly assigned, the vendors could not have compelled the defendants to have paid the money. In this sense, they could not have exacted from them a specific performance of the contract of *P.* But I think they were entitled, by virtue of their lien, to call upon the defendants, as assignees of the contract of the vendee, to pay up the purchase money, or surrender up the land, or to have it sold for the benefit of the vendors, and perhaps to account for the intermediate rents and profits, and the waste committed. The remedy, by the vendor, against the assignee, may be said to be *in rem* rather than *in personam.* This is the case when the suit is by the vendee against a purchaser from the vendor.

It is well settled, that if *A.* enters into a contract to sell land to *B.*, and afterwards refuses to perform his contract, and sells the land to *C.*, for a valuable consideration, *B.* may, by bill, compel the purchaser to convey to him, provided he be chargeable with notice, at the time of his purchase, of *B.*'s equitable title under the agreement. (Lord

*Where there is a contract for the purchase of land, it descends, in equity, to the heirs of the vendee; and they may call on the administrators to discharge the contract out of the personal estate, so as to enable the heirs to demand a conveyance from the vendor.*

*The administrators of the vendee cannot assign a contract for land, or compel its performance, without the assent of the heirs.*

*The vendor has, by virtue of his lien on the land, a right to call on the assignee of the vendee, who has taken possession of the land, under the contract, to pay the purchase*

*Macclesfield*, in *Atcherly* v. *Vernon*, 10 *Mod.* 518. *Winged* v. *Lofebury*, 2 *Eq. Cas. Ab.* 32. pl. 43. *Taylor* v. *Stibbert*, 2 *Ves.* jun. 437. *Daniels* v. *Davison*, 16 *Ves.* 249. 17 *Ves.* 433. S. C.) The rule that affects the purchaser is just as plain as that which would entitle the vendee to a specific performance against the vendor. If he be a purchaser, with notice, he is liable to the same equity, stands in his place, and is bound to do that, which the person he represents would be bound to do by the decree. The purchaser from the vendor takes the estate subject to the charge, and so, I apprehend, does a purchaser from the vendee, and he is equally responsible in respect to the estate. The vendor cannot make him personally liable for the purchase money, but the estate is liable, and if he be a purchaser with notice, it is the same thing whether the estate had or had not been actually conveyed by the vendor.

It was said, in *Green* v. *Smith*, (1 *Atk.* 572.) and had been so held long before, in *Davie* v. *Beardsham*, (1 *Ch. Cas.* 39.) that from the time of a contract for the sale of land, the vendor, as to the land, is considered a trustee for the purchaser, and the vendee, as to the money, a trustee for the vendor. A bill will lie by the vendor for the purchase money, or for the balance that may remain due, because the vendor has a lien upon the land for the purchase money. In *Mackreth* v. *Symmons*, (15 *Ves.* 329.) Lord *Eldon* held, that the vendor's lien for the purchase money unpaid, existed subject to certain exceptions, not only against the vendee, but against purchasers with notice, claiming under the vendee. The inference which he drew from a review of the authorities was, that in those general cases, in which there would be a lien as between the vendor and vendee, the vendor will have the lien against a third person who had notice that the money was not paid. That point seemed to be clearly settled; and he should have had no difficulty, he said, in deciding it upon princi-

*money, or surrender up the possession of the land, or to have it sold for the benefit of the vendor. If a person who has contracted to sell land, refuses to perform his contract, and sells the land to a third person, for a valuable consideration, such purchaser, if he have notice of the equitable title of the vendee, under the contract, may be compelled to convey the land to him.*

ple, without authority, as he could not perceive the difference between that species of lien and other equities, by which third persons having notice are bound.

In the cases already referred to, the vendor had parted with the title; but whether he had or had not, makes no difference in the principle, and the vendor's lien is certainly not impaired by withholding the conveyance. In *Pollexfen* v. *Moore*, (3 *Atk.* 272.) the conveyance was executed, but retained by the vendor as a security for the residue of the purchase money. The vendee, who had taken possession, and paid part of the purchase money, died, and the estate was held liable in the hands of the heir of the devisee of the vendee, for the remainder of the purchase money, by virtue of the vendor's equitable lien. A *dictum*, in that case, has produced a good deal of perplexity, and the case has been generally complained of as badly reported. Lord *H.* said, that the vendee " was a trustee as to the money for the vendor, but this equity will not extend to a third person, but is only confined to the vendor and vendee." But it is not the meaning of the passage, that the lien does not exist when the estate passes into the hands of a third person with notice that the money was not paid. The subsequent decision of Lord *Hardwicke*, in *Walker* v. *Reswick*, (2 *Ves.* 622.) contradicts that construction; and in that very case of *Pollexfen* v. *Moore*, the lien was extended to meet the equities arising between the representatives of the real and personal estate. So it was also in *Trimmer* v. *Bayne;* (9 *Ves.* 209.) and there the land had been contracted to be sold, but not conveyed in the lifetime of the vendee.

· The case of *Smith* v. *Hibbard*, (*Dickens*, 730.) is quite analogous on that point to the one before me. *A.* contracted to sell an estate, and received part of the purchase money, and delivered possession, and both the vendor and purchaser died before the contract was completed. A bill was filed against the devisees and executors of the pur-

chaser, to have the contract performed, and the residue of the purchase money paid out of the personal estate of the deceased ; and, if not sufficient, to have the deficiency raised by a sale of the real estate, on which the money contracted to be paid remained a specific lien. The opinion of Lord *Thurlow* was in favour of the claim as stated, and he decreed accordingly.

There can be no doubt, then, I apprehend, that the plaintiffs, *C.* and *S.*, by virtue of their lien upon the estate, are entitled to have the estate sold, and possibly they may be entitled to the redelivery of the possession, with an account of the intermediate profits and waste ; though, as to that point, I have not, as yet, formed an opinion. But if it was intended to charge the defendants *personally* with the contract of *Paddock*, and to make them pay the money at all events, the plaintiffs, *C.* and *S.*, have not entitled themselves to such a remedy, and they can only charge the defendants *in respect to the estate*, and not upon the foot of a personal contract with *P.*, to which the defendants were not parties. As against the representatives of *P.*, they may require the payment of the money under his personal contract, but the assignee is only responsible to the plaintiffs, *C.* and *S.*, on the privity of estate ; and the precise extent of that responsibility may properly be left for future consideration.

2. The next question in the case is, whether the plaintiffs, who are administrators of *Paddock*, are entitled to any remedy, under this bill, upon the covenant of indemnity.

The administrators are not personally liable on the contract of their intestate ; and, as they have averred they have no assets, it is not perceived how they can be injured ; and this assertion of theirs, creates the great difficulty on the point. There are cases to show, that equity will decree the performance of a general covenant of indemnity, though it sounds only in damages, upon the principle on which

1822.

CHAMPION
v.
BROWN.

Equity may decree the performance of a general covenant of indemnity, though it sounds only in damages.

the Court entertains bills *quia timet*. The administrators are, no doubt, entitled to compel the defendants, by bill, to perform their covenant. Thus, in *Ranelaugh* v. *Hayes*, (1 *Vernon*, 189. 2 *Ch. Cases*, 146. S. C.) *R.* assigned several shares of the excise to *H.*, who covenanted to indemnify and save *R.* harmless from all debts, accounts, covenants, and demands whatsoever, by reason of any of the covenants or agreements entered into by *R.*, and contained in the letters patent, &c. *R.* being sued by the king, filed his bill against *H.*, and prayed for a performance of the agreement in specie, alleging, that the defendant wholly refused to perform the covenants on his part, but, in breach thereof, permitted *R.* to be sued by the king. It was not charged or proved, that any rent was actually in arrear, and the defendant objected to the suit, as being founded on a personal covenant of indemnity, which sounded only in damages, and for which the plaintiff had his remedy at law. But Lord Keeper *North* decreed a specific performance, and directed a reference to a master, to tax the damages, and that, as often as any breach should happen, he should report the same specially to the Court, and *that H. ought to be decreed to clear R. from all these suits and encumbrances within the reasonable time of a year.* He compared the case to that of a surety in a bond, who, though not molested for the debt, yet, after the money is payable, the Court will decree the principal to discharge it, it being unreasonable that a surety should always have such a cloud hanging over him.

Sir *Joseph Jekyll*, the Master of the Rolls, in *Lee* v. *Rook*, (*Moseley*, 318.) made a similar observation, in respect to the rights of a surety. " If I borrow money," says he, " on a mortgage of my estate for another, I may come into equity, (as every surety may against his principal,) to have my estate disencumbered by him, and the covenant, in the mortgage deed, to pay the money, will bind the principal, for, the money being borrowed for him, it is

his debt, and the surety is only a nominal person." And why may not the administrators come into this Court, and call upon the defendants to clear the estate of *P.* from the covenants of *P.* to *C.* and *S.*? There are many other cases, besides the one already cited, in which Chancery has sustained bills for a specific performance of personal covenants, sounding in damages, and which had no concern with real estate. The case of *Ward* v. *The Duke of Buckingham,* cited by Lord *Hardwicke,* and again by Lord *Eldon,* (3 *Atk.* 385. 10 *Vesey,* 161.) may be referred to as an instance; and Lord *Hardwicke* held, in *Buxton* v. *Lister,* (3 *Atk.* 383.) that a bill could be entertained by the vendor for the specific performance of an agreement for the sale of wood. But, in cases relating to the realty, the jurisdiction is much more freely exercised, and Lord *Hardwicke* took notice of a marked distinction between the two cases. In *Pember* v. *Mathers,* (1 *Bro.* 52.) Lord *Thurlow* sustained a bill, by the seller against the assignee of a lease, for a specific performance of an agreement to indemnify, and to execute a bond to secure the indemnity. In the case before me, the defendants, by their covenant of indemnity, and purchase of the contract between *C.* and *S.* and *P.,* undertook to relieve the estate of *P.* from the burden of that contract. This is the true intent and meaning of the agreement; and it is as just that they should be decreed to clear the representatives of *P.* from the charge which they assumed for them, as it is that a principal debtor should exonerate his surety before he is sued, and not leave " a cloud always hanging over him."

The suggestion of a failure of assets, is not sufficient to defeat the suit *in limine.* There has been no account of the assets stated, and perhaps there may have been a waste of assets to the extent of the money coming to *C.* and *S.,* and for which the representatives of *P.* might be responsible, in case *C.* and *S.* were to proceed, *ex rigore,* against them. Part of the assets, to near 2000 dollars, were ap-

And where the bill is filed by the administrators, the defendants cannot object, *in limine,* that there are no assets.

plied to discharge a debt from the intestate to the defendants, and the application of the assets to that debt, was part and parcel, and a condition of this very covenant of indemnity. There may be assets which have not yet been reduced to possession. The very assets so paid to the defendants, might have been applied in part performance of the contract of *P.*, if this contract of the defendants had not intervened. We cannot know the state of the assets until an account has been taken; and the real and personal representatives of *P.* are certainly liable to be sued, and to be required to render an account to *C.* and *S.*, of the assets received. The defendants are not entitled to set up the want of assets, at least, in this stage of the cause, as an objection to a performance of their covenant, and it strikes me, at best, as a very inequitable defence. But I am not required, nor am I ready to give any opinion, at present, on the extent of the damages, which can or ought to be assessed upon the covenant of indemnity. It is sufficient to say, that the administrators are entitled to their bill for a specific performance of the covenant of the defendants, and that the remedy in this Court seems to be appropriate, under the particular circumstances of this case, and that there is enough stated in the bill to call upon the defendants to answer.

The bill does allege, in substance, that the administrators sold or assigned the contract, with certain improvements, which had been assessed, and that the defendants assumed to pay for these improvements, and, also, to refund to the administrators the payment of the 500 dollars, which had been paid by *P.* on his contract with *C.* and *S.* These facts appear in this manner : By the contract with the defendants, the administrators were to pay certain debts due from *P.* to the defendants, and, " as part payment, the amount of money paid by *P.* to *C.* and *S.*, and endorsed on their contract; also, the account of the improvements, as appraised by *Loomis* and *Lord*," were to be allowed.

'The agreement is blindly worded as to these payments, but it must, of necessity, mean, that they were to be allowed *by the defendants* in part payment of what the administrators were to pay them. The bill gives this construction, and is, for the present, to be assumed as true. It states, that the administrators accounted with the defendants, and that, on such accounting, there was found due to them 2885 dollars, and 2 cents, which the administrators paid partly by cash, partly by a bond and mortgage, and partly by obtaining credit on the above sum, for the moneys paid by *P.* on his contract, and for the amount of the improvements, as appraised by *Lord.* Here, then, it appears, that the defendants took possession of improvements on the land made by *P.*, and the assessment and allowance, mentioned in the bill, can have no other meaning. They, also, refunded to the administrators the moneys which the intestate had paid upon his contract with *C.* and *S.* This fact, taken in connexion with their possession and use of the land, and dealing with it as owners, is decisive to prove, that the defendants intended *to stand in the place of P., and to assume the payments to C. and S., with which his estate stood charged.* This is the good sense and meaning of their covenant of indemnity. If they meant, (and which I cannot and do not suppose,) to go on the land and use it as their own, make contracts for the sale of it, and strip it of its timber, and then abandon it, without any payment, under the pretext, that if the administrators had no assets, (and which the bill avers, and the demurrer admits the defendants knew, when they made the contract,) they then could sustain no damage, and, therefore, they, the defendants, were not liable under their covenants, then they, undoubtedly, must have meditated a fraud, and that alone is sufficient to give jurisdiction, and to sustain the bill for relief. But, as we ought not, in justice to the character of the defendants, to admit this to have been

1822.

CHAMPION
v.
BROWN.

1822.

CHAMPION
v.
BROWN.

The heirs of
an intestate,
who had made
a contract for
the purchase
of land, which
his adminis-
trators assign-
ed to the de-
fendants, are
proper parties
to a bill for
the specific
performance of
the contract.

their intention, the other construction becomes necessary, and must be taken to be well founded.

3. It is, also, stated, as a cause of demurrer, that the heirs of *Paddock* are parties, without showing any right or title to discovery or relief. But they have an interest in the subject matter in controversy, and ought to be before the Court, either as plaintiffs or defendants, in order that their interest may be properly protected. In equity, the lands in question descended to them as heirs, and the administrators had no right to assign away that interest; but if it be for the benefit of the heirs, being infants, they may be directed to convey their interest to the defendants; and this they offer to do by the bill, and this the Court is competent to authorize and direct.

I shall, accordingly, declare, that upon the face of the bill, the plaintiffs, *C.* and *S.*, have a lien upon the lands for the purchase money, and are entitled to call on the defendants, as assignees of *P.*, to pay it, or that the lands, with the intermediate rents and profits thereof, in their hands, be made responsible for the same; and that the plaintiffs, who are administrators, are, upon the facts stated in the bill, entitled to a specific performance of the covenants on the part of the defendants, and to an assessment of damages for breach thereof; and that the plaintiffs, who are infants, have an interest in the lands as heirs of *P.*, and are necessary parties for the purpose of having their interest disposed of, under the direction of the Court, as equity and their benefit shall dictate. It is, thereupon, ordered, that the demurrer be overruled, and the question of costs thereon reserved, and that the defendants answer the bill in six weeks, &c.