## J. H. WILSON, Receiver, and others *v.* DAVIDSON COUNTY and others.

### October Term, 1877.

COUNTY — HOW SUED — SERVICE OF PROCESS. — A county is a public corporation, and may be sued as such, by service of process on the county judge, or chairman of the County Court.

BOND OF INDEMNITY — MECHANIC'S LIEN. — Under a bond to secure the obligees "against all claims, or suits at law, or both," the obligors are

bound to indemnify against claims of mechanics for work and materials, enforced by bill in equity by virtue of the mechanic's lien law.

BOND OF INDEMNITY — JURISDICTION OF EQUITY. — The court of chancery will decree the performance of a general covenant to indemnify "against all claims, or suits at law, or both."

MULTIFARIOUSNESS AND MISJOINDER — ASSIGNORS AND ASSIGNEES. — A bill to enforce a covenant of indemnity will not be demurrable for multifariousness or misjoinder of parties merely because it is filed in the names of a succession of assignors and assignees, the assignments having been made in connection with the transfer of a railroad, and under such a commingling of the parties, and their respective rights as corporators, copartners, and co-owners, as to leave the exact interest of each in some doubt, and the bill, by its frame, conceding a *scintilla juris*, at least, in each.

*J. W. Judd* and *T. H. Malone*, for complainants.
*Guild & Dodd*, for defendants.

THE CHANCELLOR : — On demurrer. Under a decree of this court in the case of *The State of Tennessee* v. *Edgefield and Kentucky Railroad Company and others*, the Edgefield and Kentucky Railroad, " including the right of way, road-bed, rails, depots, rolling-stock, and, in short, all the property of every description, real and personal, of said railroad company," was, in the year 1871, sold to the defendants, and others not sued, the sale confirmed, and title vested in them. In November, 1871, these purchasers entered into a written contract with the American Contract Company to sell to the latter, upon the terms and conditions and for the considerations therein mentioned, all their stock in the Edgefield and Kentucky Railroad Company, " together with all their rights of property, real and personal, and their interest in the franchises, estates of any kind, contingent or vested, in the company of the Edgefield and Kentucky Railroad." The contract contained a stipulation that the vendors, described as the party of the first part, " agree, and hereby bind themselves, to protect, indemnify, and save harmless the party of the second part (the American Contract Company) from all loss or damage by reason of any recovery at law in any action now pend-

ing, or hereafter to be brought, for any cause of action against the Edgefield and Kentucky Railroad Company, or said parties of the first part as owners of the road, which occurred or shall occur before the transfer of the stock and property." The contract thus entered into was consummated by a conveyance, formally executed in January, 1872, in which the vendors "agree and covenant that they will guarantee to the party of the second part the title to all said property, against all persons whatever, and will keep and perform their contract in regard to the actions and suits therein mentioned."

On June 1, 1872, the American Contract Company sold and conveyed to Edward F. Winslow, one of the complainants, "all its right, title, and interest in and to all the property, of every kind, whether real, personal, or mixed, described in and conveyed to it" by the before-recited conveyance, "together with all and singular the tenements, hereditaments, and appurtenances thereunto belonging, or in anywise appertaining, and the reversion and reversions, remainder and remainders, rents, issues, and profits thereof; and also all the estate, right, title, interest, property, possession, claim, and demand whatsoever, as well in law as in equity, of the said party of the first part, of, in, or to the above-described premises, and every part and parcel thereof, with the appurtenances." This deed contains no covenant of warranty.

The original contract between the parties contained a stipulation that the vendors were to deposit $50,000 of state bonds to secure the American Contract Company against the claims or suits at law, or both, made or to be made for cause existing prior to the sale of said Edgefield and Kentucky Railroad. On July 31, 1872, the complainants Edward F. Winslow and James H. Wilson, "trading as Winslow & Wilson," addressed to the County Court of Davidson a proposition in writing, touching a modification of the previous contract in some particulars, and among

others, suggesting the execution of a bond in lieu of the deposit of state bonds, which was accepted by the County Court and by the other vendors. And on August 31, 1872, a formal instrument was drawn up, embodying the original contract of November, 1871, the subsequent deed of January, 1872, the proposition of Winslow & Wilson of July 31, 1872, the action of the County Court, the consent of parties, and concluding with a formal bond binding the defendants, and other vendors associated with them, " to pay Edward F. Winslow and James H. Wilson, trading as Winslow & Wilson, one hundred thousand dollars. But the condition of this obligation is this: That should we secure the said Winslow & Wilson, their successors and assigns, against all claims or suits at law, or both, made or to be made against the said Edgefield and Kentucky Railroad, or on account of the same, for cause existing prior to or at the time of the sale of said railroad by the county of Davidson, and others, to the American Contract Company, then this obligation to be null and void, and for nothing held; otherwise, to remain in full force and effect."

This bill was filed on August 8, 1877, to enforce the specific execution of this bond, and to obtain indemnity against loss by reason of certain suits which were pending previous to the sale by the defendants, and others, to the American Contract Company. These suits were bills filed by mechanics, in the years 1860 and 1861, claiming mechanics' liens for work and labor done and materials furnished in the erection of two depot-houses on the line of said road, at Cedar Hill and in the town of Springfield. Such proceedings were had in these suits, that final decrees were rendered in favor of the mechanics, first by the Chancery Court, and afterwards, on appeal, by the Supreme Court, at its January term, 1876, for about $7,000, and subjecting the depots, and the lots on which they were situated, to sale in satisfaction thereof. Under these decrees, the lots and buildings have been sold and bid in by the mechanics, who

have sunk their debts on them, and complainants are now occupying them "as tenants of said purchasers until the termination of this suit, so as to give these complainants an opportunity to compel the defendants to perform their bond sued on in this cause." The property is, it seems, subject to redemption for two years from the confirmation of sale.

The county of Davidson, being a public corporation, may, of course, be sued as such, although it might also sue or be sued in the name of the justices who compose the County Court, at any rate, if no objection is made to the latter mode by plea in abatement. *Maury County* v. *Lewis County*, 1 Swan, 236; *Ezell* v. *Justices*, 3 Head, 586; Code, secs. 402, 403. And service of process on the county judge or chairman of the County Court would certainly be good service on "the president, or other head of the corporation," under the Code, sec. 2831. It would be absurd to serve process on each justice of the County Court, or even to make them defendants, when the same end can be attained so much easier and cheaper in the mode adopted.

The obligation sued on is a joint obligation, made joint and several by the Code, sec. 2789; and all or any number of the obligors may be sued in the same action, under section 2787. The first two causes of demurrer are, therefore, not well taken.

The third cause assigned is, that the suits in which the mechanics recovered decrees for the satisfaction of their demand were not "claims or suits at law," within the meaning of the bond of the defendants. But the condition of the bond is to secure the parties "against all claims or suits at law, or both." The obligation to indemnify is, therefore, against "all claims" for causes existing prior to the sale, whether sued on or not, and the fact that the claim has been prosecuted to judgment or decree would simply do away with the necessity of establishing its justice. If the bill will lie at all, it would have lain before any suit was brought, and the suing, either at law or in

equity, could not affect the question of liability. Besides, the words " suits at law," when read by the light of the original contract, which is embodied in the bond, and which uses the words " any recovery at law in any action now pending, or hereafter to be brought, for any cause of action," etc., manifestly mean any action sustainable by the general law of the land, whether enforced in a court of law or equity. The demand of a mechanic for work and labor and materials is a legal demand, enforceable, together with the lien, in a court of law as well as a court of equity. Code, sec. 3543. It would be unreasonable to make a person's right to indemnity depend upon the forum which a third party might select, where the demand was purely legal. And it would be sticking in the bark to give the words of the bond the narrow construction sought, by this assignment, to be put upon them.

Another cause of demurrer which goes to the merits is, that the remedy is at law. If the language of the bond had followed, literally, the language of the original contract, and had been to indemnify the party " from all loss or damage by reason of any recovery at law," the question might have admitted of doubt. For, after the loss has occurred by payment, the remedy would naturally be at law. A distinction has been made as to the point of time at which a right of action accrues on a bond of indemnity, based upon the fact whether the obligation was to indemnify *from loss,* or *against liability*. See *Macey* v. *Childress*, 2 Tenn. Ch. 443, and the cases there cited. In the former case, the loss must be actually incurred; while in the latter, the object is to prevent actual loss. And no difficulty has been felt where the obligation is to indemnify against claims and actions, nor, of course, where it is to secure a party " against all claims, or suits at law, or both." For these words plainly import indemnity against the claims and suits, not against the ultimate loss by recovery. And the right to come into equity in such cases is beyond question, for there would be

no way of satisfactorily estimating the damages at law in advance of actual recovery, and a new suit would be required for every subsequent breach.   Accordingly, in the leading case of the *Earl of Ranelaugh* v. *Hayes*, 1 Vern. 189 (*s. c.*, 2 Ch. Cas. 146), where the obligation of the defendant was to " indemnify and save harmless " the plaintiff from " all payments, charges, and actions " on behalf of the crown, in the matter of certain shares of excise assigned by the plaintiff to the defendant, Lord Keeper North decreed that the defendant should execute his covenants ; and referred it to the master, with directions that as often as any breach should happen, he should report the same specially for judgment.   And he, moreover, decreed that the defendant should close the litigation in a reasonable time.   And see *Wooldridge* v. *Norris*, L. R. 6 Eq. 410.   This doctrine has been repeatedly applied, of late years, by the English chancery courts, upon bills filed by stockholders of joint-stock companies or corporations, against purchasers or persons for whose use the stock was held, for indemnity against loss by reason of the failure of such companies or corporations.   *Hemming* v. *Maddick*, L. R. 7 Ch. App. 395 ; *Cruse* v. *Paine*, L. R. 6 Eq. 641 ; *Evans* v. *Wood*, L. R. 5 Eq. 9 ; *Paine* v. *Hutchinson*, L. R. 3 Ch. App. 388 ; *Shepherd* v. *Gillespie*, L. R. 3 Ch. App. 764.   " There are cases to show," says Chancellor Kent, " that equity will decree the performance of a general covenant of indemnity, though it sounds only in damages, upon the principle on which the court entertains bills *quia timet*."   *Champion* v. *Brown*, 6 Johns. Ch. 406.   And he cites in support of this view, besides the case of *Ranelaugh* v. *Hayes*, *Lee* v. *Rook*, Mos. 318, and *Pember* v. *Mathers*, 1 Bro. C. C. 52   There is nothing in conflict with these decisions, and the principle settled by them is carried into our text-books.   2 Story's Eq. Jur., secs. 849, 850 ; Bispham's Eq., sec. 569.

The remaining causes of demurrer are based upon the right of action of the complainants to sue.   " The bill,"

says the demurrer, " contains so many individuals, firms, and incorporations " demanding an adjudication, that the bill is multifarious, and does not show a right of action in them. And it must be admitted that the complainants are considerably mixed.

The original contract was, it will be remembered, made with the American Contract Company, who sold and assigned to Edward F. Winslow. The bond sued on is made to Edward F. Winslow and James H. Wilson, trading as Winslow & Wilson. The bill avers that although the purchase from the American Contract Company was by Edward F. Winslow, yet he and James H. Wilson were, at the time, full partners in the enterprise, and the purchase was for the use and benefit of both, which was understood by the defendants when the bond was executed. The bill further states that, in 1872, the Nashville, St. Louis, and Chicago Railroad Company was created and organized under and by the laws of Tennessee, and Edward F. Winslow and J. H. Wilson were corporators and stockholders, and that the Edgefield and Kentucky Railroad, with all of its property, both real, personal, and mixed, as well as rights of certain actions and property of every description, was conveyed to this company; that this company, and several other railroad companies named, between Nashville and St. Louis, came together, and, by agreement, consolidated their several companies in one common enterprise, under the name of the St. Louis and South-Eastern Railroad Company, consolidated; that the consolidated company succeeds to all the rights of the several companies composing it, complainant Wilson being its president, and he and Winslow both large stockholders and owners therein, as well as in the Nashville, St. Louis, and Chicago Company. The bill further alleges that J. H. Wilson is now the receiver in chancery of the St. Louis and South-Eastern Railroad, appointed by the Circuit Court of the United States at Nashville.

Under these circumstances, the caption of the bill undertakes to specify the complainants in the following style: " The bill of complaint of James H. Wilson, receiver of the St. Louis and South-Eastern Railroad, who sues in his own right as receiver, and for the use and benefit of said railroad company; and also the bill of complaint of the St. Louis and South-Eastern Railway Company, consolidated, a corporation created and existing under the laws of the states of Illinois, Indiana, Kentucky, and Tennessee, who sues in its own right, and sues also for the use and benefit of James H. Wilson and Edward F. Winslow; and the bill of complaint, also, of James H. Wilson and Edward F. Winslow, citizens and residents of the state of Missouri, who sue in their own right, and sue also for the use and benefit of the St. Louis and South-Eastern Railway Company, consolidated; also the bill of complaint of the St. Louis and South-Eastern Railway Company, consolidated, who sues for the use and benefit of the complainant Edward F. Winslow; and the bill of complaint of the said Edward F. Winslow, who sues in his own right, and for the use and benefit of the St. Louis and South-Eastern Railway Company, consolidated; and also the bill of complaint of James H. Wilson, who sues in his own right, and for the use and benefit of the St. Louis and South-Eastern Railway Company, consolidated; and also the bill of complaint of the Nashville, St. Louis, and Chicago Railroad Company, a corporation created and existing under the laws of the state of Tennessee, who sues in its own right, and for the use and benefit of the St. Louis and South-Eastern Railway Company, consolidated, and who also sues for the use and benefit of James H. Wilson and Edward F. Winslow collectively, and for each separately; and also the bill of complaint of the said Edward F. Winslow and James H. Wilson, who sue for the use and benefit of the Nashville, St. Louis, and Chicago Railroad Company; and also the bill of complaint of the St. Louis and South-Eastern Railway Company,

consolidated, who sues for the use and benefit of the Nashville, St. Louis, and Chicago Railway Company; and also the bill of complaint of all the aforesaid complainants, who sue in their own right, and who also sue for the use and benefit of each other, *mutatis mutandis,* separately and collectively."

It must be admitted that this looks, at first blush, a little multifarious or multitudinous, or, at least, multiplex; *multus,* many, and *plicare,* to fold together, considerably, and *mutatis mutandis,* in any way we see proper. "*Multiplex parit confusionem,*" says Lord Hobart. Hob. 335 *a*. But multifariousness, in the sense of misjoinder of parties, although confusing, is not insuperable, and "the difficulty is no objection in this court," according to Lord Eldon. *Turner* v. *Morgan,* 8 Ves. 145.

The general principle, upon the subject of parties, is that the complainants in this court must be the real parties in interest. *Field* v. *Maghee,* 5 Paige, 539. And, to use the words of Sir John Leach, on the last day on which he sat as vice-chancellor previous to taking his seat as Master of the Rolls, "if a party, having an interest, joins with him, as a co-plaintiff, a party having no interest, the bill is demurrable, if that fact appears on the bill; if the fact does not appear on the bill, but is brought forward by plea, such a plea is a good defence to the suit." *Makepeace* v. *Haythorne,* 4 Russ. 247. This eminent judge had previously laid down the rule the same way in *Cuff* v. *Platell,* 4 Russ. 242. Lord Lyndhurst followed these rulings in *The King of Spain* v. *Machado,* 4 Russ. 225. And to the same effect are *Delondre* v. *Shaw,* 2 Sim. 237, and *Clason* v. *Lawrence,* 3 Edw. Ch. 53. But a mere *scintilla juris* in one of the plaintiffs — as, for example, a naked title in a trustee to serve a power of appointment — will be sufficient to justify making him a plaintiff, for the purposes of the trust, with other persons in interest. *Gething* v. *Vigurs,* cited in Story's Eq. Pl. (7th ed.), sec. 510, note 2. And in *Rhodes* v. *War-*

*burton*, 6 Sim. 617, where the legatees of a testator were joined as plaintiffs with the executor in suing for a debt due the testator's estate, Sir Launcelot Shadwell, V. C., held the bill not demurrable. " Legatees," he said, " cannot file a bill against a debtor to the testator's estate, unless there is collusion between the executor and the debtor. But if the executor chooses to make the legatees co-plaintiffs with him, I do not think *that* superfluity renders the record not sustainable. Persons are brought here who are not necessary parties to the suit, but it is not so injurious as to make the bill not sustainable; it is not an objection that a defendant can take." And see *Henderson* v. *Peck*, 3 Humph. 247.

So, coming nearer to the point before us, the general rule is, that an assignor need not be made a party where the assignment is absolute. *Whitney* v. *McKinney*, 7 Johns. Ch. 144; *Trecothick* v. *Austin*, 4 Mason, 44; *Norrish* v. *Marshall*, 5 Madd. 478; *Miller* v. *Bear*, 3 Paige, 466. Yet it has been held, that it is no objection to a bill that the assignor and assignee of a debt were joined as plaintiffs for its recovery. *Ryan* v. *Anderson*, 3 Madd. 174. And Judge Gaston, in *Thompson* v. *McDonald*, 2 Dev. & B. Eq. 477, considers the point with his usual learning and ability, and strongly intimates that even if the assignor be needlessly made a party plaintiff with the assignee, it is no valid ground of defence.

Upon principle, I am unable to see why the assignor of a bond or other security might not be joined with the assignee as co-plaintiff in a suit for its enforcement. It obviates the necessity of proving the assignment, or going into any of the *minutiæ* of the relation between the parties. It is, moreover, an additional protection to the obligor against any future demand upon the obligation. And such protection, it is obvious, may be desirable where the security has been informally transferred in the lump with other property, or not transferred at all, except by implication from the

dealings between the parties. The complainants in this case have, it is evident, got things mightily mixed about this very bond, by consolidations and otherwise, and do not themselves know precisely what is the legal *status* of each touching it, or in whom, if any one of them, the entire beneficial interest rests. They join in saying to the obligors that they need not trouble themselves on that score. A satisfaction of their obligation in this suit will be a clear quittance from all persons having even a *scintilla juris* in the recovery. And, by the form of this bill, they concede that there is such a *scintilla juris* in each complainant, which is admitted by the demurrer, and which, under the circumstances, probably could not be denied on the hearing. *Cunningham* v. *Wood*, 4 Humph. 418.

I think this assignment insufficient, and overrule the demurrer.