JOSEPH S. RICKER, in equity, *vs.* GEORGE MOORE and others.

Cumberland.   Opinion April 20, 1885.

*Equity.   Trusts.   Agreement to sell real estate.   Mortgage of equitable estate.*
*Attachment.   Assignment.*

It is a fundamental rule in equity that " what ought to be done is considered as done."

When one executes and delivers to another an agreement to convey land to him, for a fixed price payable at certain future day, he thereby transmits an equitable estate; and the equitable vendor thereupon becomes the trustee of the estate for the equitable vendee, retaining the legal title as security for the purchase money, and the vendee, the trustee of the purchase money for the vendor.

Such an equitable interest the vendee may incumber by a mortgage which the mortgagee may assign; and when the assignee gives to the vendor notice of the mortgage and of the assignment, the latter thereupon becomes the trustee of the assignee and liable to convey the property to him on seasonable payment or tender of the agreed purchase price.

Where the assignee, after seasonable tender of the purchase price, brought a bill against the vendor for a conveyance, making a creditor of the vendee (who had attached the latter's interest under the agreement in an action still pending) a party defendant; such defendant not having tendered the purchase price, cannot set up that the mortgage and assignment were fraudulent as to creditors.

BILL in equity. Heard on bill, answer and proof.

The bill alleges that on the fifth of January, 1880, William A. Worster was the owner in fee simple of certain real estate situated in Berwick, which was subject to certain mortgages to the Somersworth savings bank, which had been foreclosed; and on that day, by an arrangement between the bank, Worster and George Moore, Moore advanced to the bank the sum of forty-nine hundred dollars, and the bank conveyed the real estate to Moore, who agreed, by his writing under seal, with Worster, to convey the real estate to him upon the payment by Worster to Moore, within one year, of that sum and interest; on the eleventh day of November following, a payment was made reducing the amount due to thirty-one hundred and forty-one dollars and eighty-nine cents, and Moore then agreed, by his writing under seal, with Worster, to extend the time of payment of that balance to the fifth day of January, 1882. The bill further alleges that Worster, on the seventh day of January, 1880, and again on the third day of April, same year, mortgaged the real estate to Abby D. Niles, to secure sums amounting to over six thousand dollars, and on the thirtieth day of December, 1881, Abby D. Niles assigned the mortgages and debts thereby secured to the plaintiff; and that on the third day of January, 1882, the plaintiff tendered to Moore the balance with interest then due him on his agreement,

with Worster, and demanded a deed. And the bill further alleges that on the same fifth of January, Moore mortgaged the property to the bank, subject to the rights of Worster for forty-nine hundred dollars, and the bank claimed the amount due on the Moore contract.

The bill asked for a conveyance from Moore and the bank, and that they be enjoined from interfering with the plaintiff's possession.

A supplemental bill alleged that the bank, on the fifth of January, 1880, had a judgment against Worster for another sum, that judgment was assigned to William B. Lyman, of Dover, N. H., a levy was made which proved ineffectual, and thereupon, in December, 1880, Lyman brought *scire facias* against Worster, in the name of the bank, and attached the interest of Worster in all this real estate, and Lyman, with others not necessary now to refer to, were made parties respondent.

Other material facts are stated in the opinion.

*William L. Putnam*, for the plaintiff.

*Copeland and Edgerly*, for the defendants, Moore and Lyman.

VIRGIN, J. According to the fundamental rule in equity, " What ought to be done, is considered as done," when Moore executed and delivered his agreement of January 5, 1880, to W. A. Worster, therein promising to convey his interest in the property described, he thereby transmitted an equitable estate to Worster, who was then regarded as clothed with the same ultimate interest in the property which he would receive and hold if Moore had actually fulfilled his agreement. Moore then became the trustee of the estate for Worster, retaining the legal title as security for the purchase money, and Worster the trustee of the purchase money for Moore. *Linscott* v. *Buck*, 33 Maine, 530; *Green* v. *Smith*, 1 Atk. 572; *Broome* v. *Monck*, 10 Ves. 597; *Hadley* v. *Bank*, 3 DeG. J. & S. 63; Pom. Eq. § § 368 *et seq.*; *Rose* v. *Watson*, 10 H. L. Cas. 672, 678; *Lysaght* v. *Edwards*, L. R. 2 Ch. Div. 499, 506. The estate of Worster, under this agreement, was of such a

substantial character that he could sell, charge or encumber it by mortgage, as he did do to Mrs. Niles, before the conveyance from Moore. *Seton* v. *Slade*, 7 Ves. 265; *Champion* v. *Brown*, 6 Johns. Ch. 398, 403. And notice thereof to Moore would constitute him the trustee of Mrs. Niles. Story, Eq. § 789.

And the same principle would apply if the agreement, coupled with the anterior proceedings between Worster and the bank and Moore, be regarded as security for the payment of the balance of the six thousand one hundred and fifty dollar note, and therefore an equitable mortgage. For " equity regards the right of a mortgagor as the beneficial ownership of the land, subject, however, to the lien created by the mortgage as a security to the mortgagee for the payment of his demand. The mortgagor's equitable property is, in this respect, exactly analogous to the equitable estate of a vendee subject to a lien in favor of the vendor, as security for the payment of the purchase price. " Pom. Eq. § § 162, 163, 376. And while there are many facts and circumstances in this case tending to show that the negotiations by the bank, Moore and Worster, which resulted in the execution of the agreement of January 5, constituted a mortgage, still we have concluded to consider it as a conditional sale.

In his letter, Moore declined to release to any one claiming under Worster, on the ground that the agreement ran to Worster alone, and not to him and his assigns. And when the tender was made in behalf of this complainant, he declined it. Moore's counsel now contend that Worster had a right, in his own behalf, to demand and receive a conveyance on tender of the balance due under the agreement; but that if Moore had conveyed to the complainant, he would thereafter be liable to Worster. We do not so understand the rules in equity. To be sure in law, before our late statute, such an agreement could not be assigned so as to allow the assignee to bring an action thereon in his own name. But an assignment of a thing in action, though nugatory as a transfer at common law, is regarded in equity as clothing the assignee with all the rights of his assignor, and to be enforced at the suit of the assignee. Pom.

Eq. § § 168, 369. And still, to hold Moore as the trustee of Worster's assignee, notice to him was essential, in order that he might shape his course according thereto. For Moore had a substantial interest in the property, and a right to protect and assert it. And still he was bound to convey, not to Worster alone, but to whomsoever Worster might assign his interest, provided that assignee should seasonably pay or tender the sum due under the terms of the agreement. If instead of an executed mortgage or assignment, the negotiations between Worster and Mrs. Niles had taken on the form of an agreement to assign, then notice of such an agreement would not have bound Moore to her, but he might, under that state of facts, convey to Worster, notwithstanding such an agreement. *McCreight* v. *Foster*, L. R. 5 Ch. 604, 610; S. C. *sub nom.*; *Shaw* v. *Foster*, L. R. 5 H. L. 321, 333, 338, where Lords CHELMSFORD and CAIRNS elaborately discuss the subject.

In the case at bar, the notice given to Moore on January 3, was seasonable and ample, including copies of the mortgages and assignments, together with the dates of their respective registration.

So far as Moore is concerned, we perceive no reason why he should not be decreed to release the unsold land described in his agreement to the complainant.

The defendant, Lyman, however, alleges that the mortgages of Worster to Niles are fraudulent as to him, as creditor of Worster; and that he, in December, 1880, in an action still pending, attached Worster's right under the agreement of January 5. There is no doubt that he had the right and authority to attach it. R. S., c. 81, § 56. But to avail himself of any such attachment, either he or Worster should have seasonably paid or tendered to Moore, the amount due under the agreement. If, as alleged, the mortgages to Niles are void, and the assignment of them to the complainant are, for the same reason, also void, then the tender to Moore was made by one having no right to the conveyance, and therefore of no avail, and the land has consequently been forfeited and the attachment has become valueless. We think, therefore, that Lyman can not set up that defence here.

Neither has the bank any reason to defend. The money tendered belongs to the bank under Moore's mortgage, which seems to have been purposely left unrecorded, until a long while after the registration of the Niles mortgages.

Whatever may be the rights of the parties, can be determined hereafter, the principal object being now to prevent a forfeiture of the land under the agreement of January 5.

Our opinion is that the bill should be sustained, that Moore, on the payment of the sum tendered January 3, should release to the complainant the unsold land described in his agreement of January 5, the complainant to hold the same in trust for the equitable owners of the property, in accordance with their respective priorities and claims to be hereafter determined.

*Bill sustained with costs. Decree according to the opinion.*

PETERS, C. J., WALTON, LIBBEY, EMERY and HASKELL, JJ., concurred.