---

(43 App. Div. 331.)

## In re DAVIS et al.

(Supreme Court, Appellate Division, Fourth Department. October 13, 1899.)

1. ACCOUNTING BY TESTAMENTARY TRUSTEE—ALLOWANCE OF PAYMENTS
    Code Civ. Proc. § 2729, subd. 2, providing that executors may be allowed any item the payment of which they satisfactorily prove by any competent evidence other than their own oaths or the oaths of their wives, is applicable to trustees under a will, so that payment may be allowed without vouchers.

2. SAME—PRESUMPTIONS.
    Trustees under a will, on their accounting, though producing no vouchers to prove part of their alleged payments to the beneficiary, may invoke, to some extent, at least, the rule which allows a presumption of payment

whenever moneys have been collected which it would be a fraud not to
pay over.

3. SAME—EVIDENCE.

On the accounting of trustees under a will, in determining whether cer-
tain alleged payments had been made by the trustees to the beneficiary,
evidence of certain drafts signed and indorsed by the trustees and indorsed
by others, neighbors of the beneficiary, with whom the trustees had no
business relations, is admissible, though the drafts were otherwise uncon-
nected with the beneficiary, when connected with other evidence showing
the trustees' method of making payments, and their general method of
dealing with the beneficiary.

4. EXECUTORS—LAND CONTRACTS OF TESTATOR.

Executors may pay out of the personal property of the estate, on the
demand of the heirs, the purchase price under a land contract entered
into by their testator.

5 SAME—ACCOUNTING—CREDITS.

Testator devised all his property to his wife for life. The executors paid,
on demand of the devisees, a part of the purchase price under a land
contract entered into by the testator, and then traded the land for other
land. On the executors' accounting after the death of the wife, the surro-
gate refused to allow the executors said payment on the ground that
there were equitable questions to be passed on in regard to the executors'
transfer of the land bought by their testator; the contention of the devisees
being that the transfer was unauthorized, and that they and the legatees
had been deprived of the fruits of the payments made on the contract,
and that, therefore, the question would have to be settled by a court
having equitable jurisdiction. *Held*, that it was error to refuse the credit
to the executors, since the land passed to the devisees, and not to the
legatees, who were the parties to the accounting.

Appeal from surrogate's court, Oneida county.

In the matter of the final accounting of John B. Davis and Owen
T. Davis, Jr., as executors and trustees under the will of Owen T.
Davis, deceased. From a decree in surrogate court, based on the
executor's accounting, the executors appeal. From the decree as
based on the accounting of the executors as trustees, Thomas T.
Davis, the administrator of the estate of the life tenant and bene-
ficiary, appeals. Modified.

Upon the 10th day of May, 1871, Owen T. Davis died, leaving a last will and
testament, the material parts of which are as follows, viz.: "I give and be-
queath my beloved wife, Elizabeth, all my real and personal estate, to be con-
trolled and enjoyed by her during the term of her natural life; the executors
hereafter appointed to have the management of the same subject to her con-
trol. * * * After the death of my said wife aforementioned, I give and
bequeath to my children, hereafter named, all my real and personal estate of
whatever kind, to be equally divided between them. * * *" On the 9th
day of March, 1871, Owen T. Davis entered into a written contract with one
Jacobs for the purchase of a house and parcel of land consisting of about 12
acres, situated in the town of Trenton, Oneida county, for $3,100. The con-
tract provided for the payment of $2,100 upon April 1, 1871, and the premises
were subject to a mortgage of $1,000, which was assumed by the vendee. Im-
mediately upon the purchase, Owen T. Davis and his wife took possession and
resided upon the land, and Owen T. Davis died without having paid anything
upon the contract price. Thereafter his executors paid the sum of $1,300 upon
the contract, and, after having paid that sum, assumed to make an exchange
of this land to one Jones for a house and lot situated in the village of Holland
Patent. In the exchange the Jacobs land was estimated at $3,000 and the Jones
house and lot at $1,850. The $1,000 mortgage upon the Jacobs land was as-
sumed by Jones, who took an assignment, from the executors, of the testator's
interest in the land contract. The executors took from Jones a deed of the
house and lot in Holland Patent to themselves as executors. They received

$150 in money, and gave to Jones a mortgage of $800 upon the house and lot. Owen T. Davis left a farm of about 150 acres and about $5,000 in personal property, in addition to his interest in this land contract. Of all this property the executors took the management during the life of the widow, who died in the year 1895. Thomas T. Davis was appointed administrator of her estate. After the death of the widow, the executors have assumed to account both as executors and as trustees. From the determination of the surrogate upon their accounting as trustees, Thomas T. Davis, as administrator of the widow, has appealed. From the settlement of their accounts as executors, the executors themselves have appealed. Further facts appear in the opinion.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, SPRING, and SMITH, JJ.

Thomas S. Jones, for executors.

Josiah Perry, for contestant.

SMITH, J. The complaint of Thomas T. Davis as administrator of the estate of the widow is of the sum allowed the executors as paid to the widow during her life. He contends that the surrogate had not sufficient proof of many of the items which enter into the allowance made. The surrogate finds that Elizabeth Davis, the widow, was old, and blind, and unable to read and write; that her family, during her widowhood, much of the time consisted of a grandson of unsound mind, and at least two other members of the family part of the time, together with servants; that she had no means of support except the income of her husband's estate; that she was cared for during her widowhood in a manner suitable to her age and condition of life, and that she received no aid from any source except the estate left by her husband. He further finds that it was necessary to expend substantially the entire income from the said estate in the care and support of said Elizabeth Davis, and that the same was so expended as set out in the accounting with her by the executors; that by reason of the fact that the old lady was blind, and unable to read and write, vouchers could not be taken of payments that were made to her in money and by drafts indorsed in blank by the executors, which were cashed by her neighbors; that many articles of merchandise were furnished her by the executors, for which a reasonable price was charged; that drafts delivered to the widow by the executors during many years of the widowhood have been destroyed by fire. The contention of the contestant is that because, in many instances, vouchers were not furnished, or their loss accounted for, for such payments the executors cannot be allowed. It will be borne in mind, however, that for these moneys they are accounting as trustees. They are disqualified to swear to any personal transactions with the widow. Section 2729, subd. 2, of the Code of Civil Procedure prescribes in what instances payment will be allowed to an executor without vouchers. It reads: "He may be allowed any item the payment of which he satisfactorily proves by any competent evidence other than his own oath or that of his wife." Trustees are held to no more stringent rule. The surrogate has certified that these items have all been proven to his satisfaction. We have examined the record, and find, we think, in the case, sufficient justification

for this conclusion. To some extent, at least, they may invoke the aid of ·the rule of proof held in Beattie v. Beattie, 83 Hun, 295, 31 N. Y. Supp. 936, which allows a presumption of payment wherever moneys have been collected which it would be a fraud not to pay over.

Complaint is further made that in reaching this conclusion the surrogate considered evidence improperly admitted, to wit, the evidence of certain drafts signed and indorsed by the trustees, and indorsed by other parties, neighbors of the widow, with whom it appears the trustees had no business relations, but which drafts were otherwise unconnected with the widow. This evidence was, we think, properly admitted in connection with other evidence, showing their method of making payments, and their general method of dealing with the widow. If, however, the evidence can be said to be technically incompetent, in the light of all the evidence, the error in its admission was harmless, and has not affected the result.

The complaint of the executors is of the refusal of the surrogate's court to allow them credit for two payments, one of $1,100, the other of $200, made by them upon the land contract of their testator. · In the case of Champion v. Brown, 6 Johns. Ch. 398, the rule of law, as stated in the headnote, is:

"Where there is a contract for the purchase of land, it descends in equity to the heirs of the vendee as real estate; and they may call on the executors or administrators to discharge the contract out of the personal property of the vendee, so as to enable the heirs to demand a conveyance from the vendors."

See Williams v. Kinney, 43 Hun, 8.

Within this rule of law it would seem that these payments upon this land contract were lawfully made by these executors from the estate of their testator. And why has credit been refused to them? The reason assigned by the learned surrogate is found in the seventh conclusion of law, as follows:

"I further find there are equitable questions to be passed upon in the alleged transfer, or attempted transfer, of the Jacob contract, or interest thereunder, to and with Griffith O. Jones, for the house and lot in the village of Holland Patent, and which transfer is referred to in the twelfth finding of fact herein. The contestants claim that such transfer was unauthorized, and that they and the legatees of said will have been deprived of the fruits of the payments made on said contract; that many equitable questions arise in connection with said transactions, and consideration thereof is refused and declined because of want of power in me. For the same reason I decline on this accounting to give credit to said executors for the payment made on said contract, leaving the same to be passed upon by a court having equitable jurisdiction."

The reason assigned does not support the conclusion reached. This land has passed to the devisees of the testator; not to his legatees who are the parties to this accounting. To point this distinction more clearly, suppose the land had been devised to a stranger. Because that stranger might have some claim, legal or equitable, would the executor be refused credit for a debt of the testator, paid, and be compelled to pay to the legatees until the rights of such devisee could be determined? Such a rule of law would not be claimed. What greater rights, upon this accounting between the executors and the legatees, have these devisees because they happen to be parties to this accounting? Again, granting, for the ar-

gument, that these legatees have some claims as against the executors, such claims can only defeat a claim of credit for these lawful payments if they are sufficient to constitute an offset. With the claim of the executors admitted, should they be required to pay over to these legatees these moneys because there may be a possible offset upon their part? If the effect of this decree were to set aside these moneys to await the adjustment of equities, the conclusion might seem more plausible. But such is not the effect. By it the executors are compelled to pay the moneys to the legatees, for them to hold, without security, pending the adjustment of equities. It does not appear that either the legatees or devisees have any claims against the executors or Jones. If they consented to the exchange of property, they clearly are bound by it. Their claims are, at the most, possibilities. They furnish no warrant for the denial to the executors of a credit to which they are otherwise entitled. The decree of the surrogate's court should therefore be modified so as to give to the executors credit for the payment of the $1,100 and the $200 upon the land contract as of the date when paid. As they consent to a charge of $150, received in the exchange of land, their accounts may be charged therewith. The decree may be further modified so as to provide that it is without prejudice to the rights of the devisees to any right of action which they may have by reason of the assumed exchange of land by the executors. The decree, as thus modified, is in all respects affirmed, with costs of the appeal to the executors as against the contestant.

Decree of the surrogate's court modified as stated in the opinion, and, as so modified, affirmed, with costs of this appeal to the executors as against the contestant. All concur.