MORRIS HOPPAUGH ET AL. v. THOMAS McGRATH.

1. The plaintiffs contracted with D. to erect a building according to plans and specifications prepared by an architect, and to provide all the materials therefor. They sub-contracted with the defendant for the mason work and materials. D. sued the plaintiffs on their contract to recover damages for defective work and materials, including defects in the mason work. Plaintiffs gave defendant notice in writing of the pendency and object of D.'s suit, and requested him to come in and help defend. The defendant did not unite in the defence of D.'s suit, and plaintiffs defended alone. At the trial, by direction of the court, the jury by their verdict specified how much of the damages awarded was for defects in the mason work and how much for the other work. D. entered his judgment for the gross amount of damages awarded him, ignoring the special findings of the jury apportioning the damages. The plaintiffs have not paid D.'s judgment.

2. In an action by the plaintiffs against the defendant on his sub-contract—*Held*—

1. That the verdict was competent evidence of the special finding of

the jury of the amount of damages awarded against the plaintiffs for defects in the mason work.

2. That the plaintiffs might maintain this suit and have damages awarded to them for damages recovered of them for defects in the mason work in D.'s suit without paying the judgment D. recovered against them.

3. That the defendant having notice of D.'s suit, was concluded by the record in that suit with respect to the fact that the mason work was not done in compliance with the plans and specifications, and that in consequence thereof the damages as found by the jury accrued therefrom, and as to all matters of defence against the demands of D. that might have been presented in that suit. But,

4. That the defendant might insist and prove that his contract with the plaintiffs did not in that respect embrace the liability the plaintiffs incurred under their contract with D., and that the defective workmanship or materials used in the mason work were occasioned by the plaintiffs' own acts or were consented to by them.

On rule to show cause.

Hoppaugh & Wilson made a contract in writing with George M. Douglas to construct and erect for him a dwelling house and stable according to plans and specifications prepared by an architect. Hoppaugh & Wilson sub-contracted with McGrath to do the mason work and provide the materials for the same. After the buildings were erected Douglas sued Hoppaugh & Wilson to recover damages for defective workmanship and materials. The defendants in that suit gave McGrath written notice of its pendency and its object, and called upon him to come in and help defend it. McGrath did not comply with this notice, and the suit was defended by Hoppaugh & Wilson. At the request of the defendants' attorneys, the court directed the jury that, in case the plaintiff made out a cause of action for damages relating to the carpenter work, and also to the mason work, they should designate by their verdict how much was given for defects in the carpenter work and how much for defects in the mason work. In compliance with this instruction, the jury returned a verdict certifying that they find for the plaintiff, and assess his damages against the defendants at the sum of $2,351.15—for

| | | |
|---|---:|---:|
| Mason work. .................. ......... ...... ......... | $1,367 | 60 |
| Carpenter work... ....... ......... ...... ...... | 233 | 55 |
| Damages, mason work. .......... ...... ...... | 600 | 00 |
| Damages, carpenter work ...... ........... | 150 | 00 |
| | $2,351 | 15 |

The plaintiff entered his judgment generally for the gross sum of the damages, ignoring the special finding contained in the verdict. The judgment has not been paid.

On the facts above stated Hoppaugh & Wilson brought suit against McGrath. In their declarations the plaintiffs in the second count declared specially, setting out the facts above stated, and claiming to recover of the defendant the damages recovered of them in the Douglas suit for defects in the mason work. At the trial the judge directed a verdict for the plaintiffs for that sum and interest, and granted a rule to show cause for a new trial.

Argued at February Term, 1890, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE and SCUDDER.

For the plaintiffs, *Frank E. Bradner.*

For the defendant, *Joseph Coult.*

The opinion of the court was delivered by

DEPUE, J. This is an action for damages for the breach of a contract. It is true that the damages arising from defects in the mason work resulted in the first instance to Douglas, but nevertheless they were damages that accrued as a natural consequence of the breach of the defendant's contract. On the theory that the defendant's contract was identical in its scope and legal effect with the plaintiffs' contract with Douglas with respect to the mason work, the loss sustained by the plaintiffs in the damages they might be compelled to pay Douglas for defects in this work were damages that resulted directly to the plaintiffs as a natural consequence

of the defendant's failure to perform his contract. Nor are the plaintiffs concluded from recovering consequential damages of this character by the fact that the Douglas judgment has not been paid. *Randall* v. *Raper, El., B. & E.* 82, is a precedent illustrating the principle applicable to this class of cases. The action in that case was upon a warranty on the sale of seed barley. The declaration alleged as special damage that the plaintiff, relying on the warranty, had sold the seed with a similar warranty to third persons, who had sown it and had obtained a crop inferior to that which would have been produced by seed barley of the quality warranted, and so incurred damages which the plaintiff was liable to make good. The proof at the trial was, that the loss to parties who had purchased from the plaintiff by reason of the difference in their crops was in all £261 7s. 6d. These purchasers had made claims upon the plaintiff for compensation, and the plaintiff had agreed to satisfy them; but no amount had been fixed, nor had any sum been paid. A verdict for £261 7s. 6d. was sustained. Lord Campbell said: "The defendant contends, in the first place, that even if the plaintiff had actually paid to the sub-vendees the amount of damage suffered by them, the money so paid could not have been recovered in this action. But I am clearly of opinion that in that case the plaintiffs, being compelled to pay these damages to the sub-vendees for a breach of a warranty *similar to that given by the defendant to the plaintiffs,* would have been entitled to recover such damages as special damage in this action. It was a probable, a natural, even a necessary consequence  *  *  * necessarily resulting from the contract, as to the quality of the seed, not being performed. But it is contended, secondly, that even if the damage could be recovered in the event of actual payment, they cannot be recovered upon a mere liability. I think we cannot lay down the rule that a mere liability cannot be the foundation of damages; if it can, the amount may be estimated by a jury. The demand is made, and it is a just one; and though it is not yet satisfied, yet the jury may find to what extent the plaintiffs are damnified by their having

become liable to it." Crompton, J., said : "Taking the narrowest rule as to the probable and necessary consequences of a breach of contract, these damages fall within it. It is said, however, that the plaintiffs have only incurred a liability and have made no payment. But I entirely deny that payment is necessary to entitle a party to recover. Liability alone is sufficient. * * * It is quite clear that in this case the liability of the plaintiffs to pay their sub-vendees would be a proper item in estimating damages. In an action for a breach of contract you can recover only once, and the action accrues at the moment when the breach occurs. A liability to payment which has been incurred by a plaintiff in consequence of the breach of a defendant's contract, may well form a part of the damages, though it may be difficult to estimate them." Mr. Mayne tersely states the rule in these words : " When the wrong complained of has involved the plaintiff in a legal liability to pay money to a third party, the amount of this liability may be included in the damages, though not yet paid by the plaintiff." *Mayne Dam.* 65. The observations on Randall *v.* Raper by Baron Martin, in *Josling* v. *Irvine,* 6 *Hurlst. & N.* 512, 517, and by Mr. Justice Willes, in *Borries* v. *Hutchinson,* 18 *C. B., N. S.,* 445, 464, express the legal principle on which this rule is founded. The damages the plaintiffs might be compelled to pay Douglas are, to adopt the language of Baron Martin, " an expense which they incurred by the defendant's default."

The distinction is between a simple contract to indemnify against damages and a contract to do some act for which the plaintiff is primarily liable, as to pay money for which the plaintiff is bound, or to do work for a third person which the plaintiff has contracted to do. This distinction is clearly stated by Mr. Justice Dixon in *Sparkman* v. *Gove,* 15 *Vroom* 252. The cases there cited are illustrations of the principle that a liability to pay, incurred in consequence of the defendant's failure to perform his contract, may be made a ground of special damages, although the plaintiff has not satisfied and discharged that liability.

Actions on contracts of warranty of title stand on a different ground. There is no breach of such a contract until eviction or its equivalent—the recovery and payment of damages. In contracts of the character of that under consideration, the breach occurred immediately on the failure to perform the work as it was contracted for, and there is a broad distinction between the circumstances which will occasion a breach of contract and the measure of damages incurred. Sparkman *v.* Gove is a direct authority for the plaintiffs' right to their action without payment of the Douglas judgment—the amount of their liability for the defective work complained of being liquidated in a suit to which the defendant was in effect made a party by notice. The embarrassment experienced and obviated in that case, arising from the fact that the defendant might be subjected to a double recovery, does not exist in this case. The defendant had no contract with Douglas, and is under no legal liability to him directly.

The declaration in the Douglas suit contained averments that the mason work as well as the other work embraced in his contract with these plaintiffs were improperly done, and claimed damages generally for such breaches of contract. Though McGrath did not join in defending that suit, he knew one of the grounds of complaint therein was the defect in the mason work. He had notice of the suit, with the request that he should unite in defending it, and appeared at the trial as a witness called by the defendant. After verdict a rule to show cause was obtained by the defendant's counsel, which was discharged for the reason that McGrath refused to pay the expenses of prosecuting it.

By the judgment in the Douglas case, the plaintiffs' liability to him was liquidated. The record of the recovery in that suit was competent evidence, at least for the purpose of showing that Douglas made a demand of them in respect to defects in the mason work, and that that demand was successfully prosecuted. The verdict was also competent evidence in this suit as special findings of issues included in the record submitted to the jury by the trial court. The plaintiff in that suit had

no interest in these special findings. His claim for damages was against those defendants exclusively, and he was under no obligation to set out these special findings in his judgment. He was at liberty to treat the damages awarded to him as an entirety as against the parties to whom alone he was able to look for these damages, and to enter his judgment accordingly. The verdict was not offered to contradict or vary the judgment. It was offered to show the finding of the jury on an issue embraced in the general allegations in the pleadings. A verdict may be given in evidence for the purpose of showing the opinion of the jury on certain points in issue, as, for example, when the jury on a former trial have found matter of reputation or a particular right. 2 *Phil. Ev.* 127. In an action on an indemnity bond the *postea* is sufficient proof of an allegation that the plaintiff was obliged to pay, and did pay, a certain sum as and for a damage recovered, where, in consequence of an arrangement between the parties, no judgment was entered. *Harrap* v. *Bradshaw*, 9 *Price* 359. In *Kipp* v. *Brigham*, 7 *Johns.* 168, the action was by a sheriff against sureties on a bond given to him as security for gaol liberties granted by him to a prisoner; it was held that the *nisi prius* record and verdict in a suit against him for an escape was competent evidence to prove the recovery and actual damages. In delivering the opinion of the court, Chief Justice Kent said: " The verdict is good evidence to prove the fact of the suit and verdict against the plaintiff for the escape in question, and it was so far proof of actual damage." He added : " It is stated that the defendants had due notice of the suit against the plaintiff, and that they actively co-operated in defence of it. The verdict is therefore to be considered in effect as a verdict against them, and I see no reason why it may not be considered as evidence of the amount of the debt or demand against the plaintiff. For this purpose it was admissible as much as it would have been to prove a set-off."

The material question is as to the effect of that record in this suit. Where a party is sued for a cause of action for which he has remedy over against another person as and for

his indemnity, whether such right of indemnification arises by implication of law or by contract, he may, by giving notice of the suit to the person ultimately liable, and requesting him to defend, make the recovery in that case conclusive evidence of his liability and of the *quantum* of damages in a subsequent suit for the indemnity, whether the latter appear and make the defence or not. " The purpose of giving notice," as was said by Mr. Justice Buller, " is not to give a ground of action ; but if a demand be made which the person indemnifying is bound to pay, and notice be given to him, and he refuse to defend the action, in consequence of which the person to be indemnified is obliged to pay the demand, that is equivalent to a judgment, and estops the other party from saying that the defendant in the first action was not bound to pay the money." *Duffield* v. *Scott*, 3 *T. R.* 374, 377. The effect of notice is to let in the party who is bound to indemnify, to defend the suit against the defendant, and to preclude him from showing, when sued for such indemnity, that the plaintiff has no claim for the alleged loss, nor to the amount alleged. 1 *Suth. Dam.* 143 ; *Sedgw. Dam.* 391 (327). In *New Jersey Ins. Co.* v. *Meeker*, 11 *Vroom* 18, 23, there were two suits— the one against the grantee in an action of dower, the other by the grantee against the heirs of the grantor on his covenants of warranty, the verdicts in which were in exact opposition. Chief Justice Beasley, in refusing to disturb the latter verdict, said : " It is clear that this contrariety in results is not the fault of the law, for if the plaintiff had given notice of the pendency of the former action to the parties in interest, the judgment in that case would have been binding upon them, and inconsistent conclusions with regard to the same state of facts would have been impossible."

The rule in question is most frequently applied where there is a contract of indemnity or warranty, or the relation between the parties is that of principal and surety, master and servant, principal and agent, and the like. But these instances do not mark the limits within which the doctrine is applicable. It has been applied to contracts of reinsurance (*New York, &c.*,

*Ins. Co.* v. *Protection Ins. Co.*, 1 *Story* 458); to municipal corporations mulcted in damages for non-repair of streets as against persons who were under contracts to repair, or upon whom the duty of reparation devolved (*Robbins* v. *Chicago*, 4 *Wall.* 657; *Inhabitants, &c.*, v. *Henshaw*, 101 *Mass.* 193); to cases in which a party is made responsible in damages because of another's negligence (*Littleton* v. *Richardson*, 34 *N. H.* 179), and to suits between the contractor for work or services and his sub-contractor, through whose default in executing the work or performing the services the former has been subjected to a suit for damages. *Baxendale* v. *L. C. & D. Ry. Co., L. R.*, 10 *Exch.* 35; *Fisher* v. *The V. D. T. Asphalt Co.*, 1 *C. P. Div.* 511. In the last two cases the rule was conceded as to the damages which the original contractor was subjected to; the struggle was as to the liability of the sub-contractor for the costs and expenses of the unsuccessful defence in the original suit. The decisions on this subject are collated in the text books above cited. The principle on which the doctrine rests is expressed by Mr. Justice Bell, in *Littleton* v. *Richardson, supra*, as follows: " When a person is responsible over to another; either by operation of law or by express contract, and he is duly notified of the pendency of the suit and requested to take upon himself the defence of it, he is no longer regarded as a stranger, because he has the right to appear and defend the action, and has the same means of controverting the claim as if he were the real and nominal party upon the record. In every such case, if due notice is given to such a person, the judgment, if obtained without fraud or collusion, will be conclusive against him whether he has appeared or not; for he is bound to take up the cause at that point, in exoneration of the defendant." *Big. Estop.* (*5th ed.*) 133.

On the introduction of the record of the judgment in the former suit, the estoppel will extend no further than the issues that were capable of being litigated in that suit. To entitle the plaintiff to indemnification for the damages recovered against him in the former suit, he must show a contract with the defendant which in terms and legal effect embraces the

entire cause of action for which such damages were awarded,. and that question will be a matter of contestation in the suit. The defendant may also show that the injury complained of was occasioned in whole or in part by the acts or conduct of the plaintiff himself, or any other matter which, as between the plaintiff and himself, would exonerate him from liability for the wrongful acts complained of in the first suit, for they are matters which were not within the scope of the litigation in the first suit, or pertinent to any issue involved therein. And in the event of the defendant succeeding on any one of these grounds, the record in the former suit would be evidence only that the plaintiff was subjected to a suit and to damages for the cause of action disclosed in that record.

The defendant in this action having had notice of the Douglas suit and of its object, and also an opportunity to review the proceedings in that suit after verdict, will be concluded by that record with respect to the fact that the mason work was not done in compliance with the plans and specifications, in conformity with the contract of the plaintiff with Douglas, and also as to the fact that in consequence thereof the damages as found by the jury accrued therefrom, and as to all matters of defence against the demands of Douglas that might have been presented in that suit. But he was at liberty to insist and prove that his contract with the plaintiffs did not in that respect embrace the liability the plaintiffs incurred under their contract with Douglas, or that the defective workmanship or materials used were occasioned by the plaintiffs' own acts or were consented to by them.

The contract between the defendant and the plaintiffs was a verbal contract. The defendant made his estimate for the mason work, including the excavation for the cellars, after an inspection and examination of the specifications for the mason and carpenter work, before the plaintiffs made their contract with Douglas. The defendant testified that he did not contract for all the mason work called for in the specifications. He enumerated the omission of a bluestone course under each tier of beams and a change in the description of the brick for the

front, and that these changes were made by the consent of Douglas and the plaintiffs before any of the contracts were signed. The contention was, that as between these parties the omission and change mentioned were justified by the defendant's contract, although as between Douglas and the plaintiffs they would not be warranted by the terms of the plaintiffs' written contract with him. The defendant's counsel also offered to prove that in the original action damages were awarded arising from the settling of the stable by reason of an insecure foundation, due to the character of the soil, and contended that the sub-contractor was not under an obligation co-extensive in that respect with the obligation of the plaintiffs as contractors for erecting the building. The evidence touching that subject is the defendant's testimony, as follows: "Before I started to build the stable, Mr. Douglas and Mr. Harwood and all of us found out that we couldn't build the stable on a firm foundation, because the east end of it ran on to that old gully where the brook runs into the Kearny property; for me to make an estimate for each step down until we came to the foundation that we would think sufficient, and that they would pay for all extra work under three feet that we would have to go down for a foundation. It was an extra bill for the extra building of a foundation, because we had to go down four feet, and then two feet more, and then a step of two feet more, until we went down fifteen feet." The defendant testified that the bill for the extra work to the foundation of the stable was made out against Douglas and collected of him by suit. The plaintiffs had nothing to do with this contract. On this testimony the offer of the defendant's counsel was overruled, on the ground that if Douglas made any claim for the insecure foundation, that claim should have been litigated, and the facts given in evidence in his suit as a defence to such a claim.

The evidence touching these matters was meagre and unsatisfactory, but we think enough appears to justify a new trial, in order that the case may be fully presented on the merits. As the case appears at this time it does not call for a consid-

·eration of the question whether the obligation of a contractor who has contracted to erect a building, for defects in the foundation, is or is not more extensive than that of the sub-·contractor who contracts with him for the mason work and foundation walls, including the cellar excavations, on the basis ·of the specifications for such work, and with knowledge of the size and character of the buildings to be erected.