THE BEACON LAMP COMPANY and AARON MOSES, its trustee in bankruptcy.

*v.*

THE TRAVELLERS INSURANCE COMPANY and MARY BARDZIK.

[Submitted September 19th, 1900.   Decided November 7th, 1900.
Filed June 4th, 1901.]

1. A contract by an insurance company to indemnify against loss from liability for damages on account of personal injuries to employes caused by the negligence of assured, is not a contract of indemnity merely, on which suit could not be brought until the assured paid a judgment against it for personal injuries to an employe, but in equity the insurer becomes the principal debtor to an injured employe, and the assured the surety, so that a bill would lie by the latter to establish the principal's liability and compel it to perform its contract of indemnity.

2. An insurance company contracted before the Bankrupt law to indemnify against loss from liability for damages on account of personal injuries to employes caused by the negligence of the assured; provided, however, that no action should lie thereunder respecting any loss unless brought by the assured himself to reimburse him for loss actually sustained, and paid in satisfaction of a judgment.—*Held*, the proviso did not apply where the assured was forced into bankruptcy, and payments of judgments against it enjoined.

3. Where an insurance company contracted to indemnify against loss from liability for damages on account of personal injuries to employes, caused by the negligence of the assured, an injured employe, who has recovered judgment against the assured, may sue the insurer in equity, as principal debtor, to compel payment of the full amount of the judgment, notwithstanding the insolvency of the assured.

On demurrers by the insurance company to the complainants' bill, and to the answer by way of cross-bill of Mary Bardzik.

*Mr. Freeman Woodbridge,* for the complainants.

*Mr. Alan H. Strong,* for the defendant Mary Bardzik.

*Mr. Charles C. Black* and *Mr. George Holmes,* for the Travellers Insurance Company.

PITNEY, V. C.

The complainant and its trustee in bankruptcy claim to occupy the position of a surety for the defendant insurance company which, they claim, occupies the position of principal debtor to the defendant Mary Bardzik.

The object of the original bill is to enforce the payment by the insurance company to the other defendant, Bardzik, of the debt so due, in exoneration of the bankrupt's assets. The cross-bill of Miss Bardzik is aimed at the insurance company, and is based not upon any privity of contract between her and the insurance company, but upon the fact that she has a demand by judgment against the complainant, against which demand complainant is indemnified by the insurance company, and she claims that out of these facts arises an equity on her part to demand payment directly from the insurance company. The prayers of the original bill and of the cross-bill are substantially the same.

The right of the complainant, if it occupies the position of surety for the insurance company, to enforce such a demand by a suit in chancery framed as is this, seems to be well settled. Chancellor Kent, speaking of the right of a surety against the principal, in *King* v. *Baldwin, 2 Johns. Ch. 554,* says (at *p. 560*) : "The surety is entitled to pay the debt when it becomes due and sue the principal debtor, or he may call upon the creditor by the aid of this court to enforce his demand against the principal."

Chancellor Green, in *Irick* v. *Black, 2 C. E. Gr.* (at *p. 195*), says : "As soon as the debt has become payable, he [the surety] may file a bill to compel payment by the principal, in order that the surety may be relieved from responsibility."

Mr. Justice Depue, speaking for the court of errors and appeals, in *Railroad Co.* v. *Liltle, 14 Stew. Eq. 519* (at *p. 529*), says : "In equity the surety's remedy is not necessarily confined, as at law, to obtaining indemnity after payment of the debt. Under special circumstances, where his equitable right to have the debt paid by the principal, or out of the latter's property, can be enforced without injury or prejudice to the creditor's rights, he may compel the creditor to resort to securities in his hands, or under his control, the property of the principal, in satisfaction of the debt, before coming upon the surety; as, for

Beacon Lamp Co. *v.* Travellers Insurance Co.

instance, where the creditor is fully indemnified and will be subjected to no delay, and exposed to no risk of loss if he is compelled to resort first to the property of the principal." And this right, he says, on the same page, does not depend upon or require any contract for support, but results from the relation of surety and principal, independent of contract, and is founded upon the principle of natural justice of placing the charge where in equity it belongs.

And see *Herron* v. *Mullen, 11 Dick. Ch. Rep. 839,* in the court of errors and appeals; *Wooldridge* v. *Norris, L. R. 6 Eq. Cas. 410,* where several English authorities are collected; *Nisbet* v. *Smith, 2 Bro. Ch. C. *579,* and cases cited in note; *Champion* v. *Brown, 6 Johns. Ch. 398* (at *p. 405*) ; *1 Story Eq. § 730; Mitf. Pl. *148;* and see the principal American cases collected in the American notes to *Dering* v. *Winchelsea, 1 White & T. Lead. Cas. *114;* and *Brandt S. & G. §§ 191, 192, 204, 205, 206.*

The principle upon which these authorities rest is that it is inequitable to compel a surety to first pay the money to the creditor as a prerequisite to a remedy against the principal.

The proceeding is in effect a suit by the surety against the principal to compel him to pay his debt to the creditor; and the objections to the suit have generally been raised by a creditor who happened to be unwilling to enforce his claim against the principal. But where it appears, as here, that there is no contest between the surety and the debtor, but both desire the payment of the debt, the right to proceed seems to be unquestioned. In fact, it seems to have been held by Chancellor Kent in *Champion* v. *Brown, supra,* that they were properly joined as complainants in that case.

It is equally well settled that a creditor has a right of subrogation to any choses in action or other property which the surety has received from the principal to indemnify him, and included in that category is any covenant which the debtor has given the surety to pay the debt. The leading case in New Jersey is *Klapworth* v. *Dressler, 2 Beas. 62* (the head-note of this case states the doctrine erroneously in saying that the grantee becomes the surety for the grantor. The opinion says the grantor becomes

the surety for the grantee (see *p. 63,* bottom), followed by a line of cases whose citation is not necessary.

The whole subject was thoroughly discussed by Mr. Justice Gray in *Keller* v. *Ashford, 133 U. S. 610,* where, after citing with approval *Klapworth* v. *Dressler,* and commenting on many other cases, he says: "In short, if one person agrees with another to be primarily liable for a debt due from that other to a third person, so that as between the parties to the agreement the first is the principal and the second the surety, the creditor of such surety is entitled, in equity, to be substituted in his place for the purpose of compelling such principal to pay the debt."

With this preliminary statement of the rules of equity governing the question, let us see how far the facts admitted by the demurrers bring the present case within them.

The lamp company, complainant, being engaged in carrying on a factory, purchased from the insurance company, defendant, a policy of insurance by which it agreed to indemnify the lamp company, for the term mentioned, against loss from common law or statutory liability for damages on account of bodily injury accidentally suffered by any employe caused by the negligence of the assured, to the extent of not more than $5,000 incurred and suffered by one individual, and subject to certain enumerated conditions and exceptions not necessary here to be stated, except the fifteenth, which provides that

"No action shall lie against the company as respects any loss under this policy unless it shall be brought by the assured himself to reimburse him for loss actually sustained and paid by him in satisfaction of a judgment after trial of the issue."

During the life of this policy Miss Bardzik was employed by the lamp company in its factory, and suffered personal injury under such circumstances as to render the lamp company liable to her for damages, and upon a recovery by her against the lamp company to render the insurance company liable to indemnify the lamp company to the extent of not more than $5,000. This is admitted by counsel of the insurance company. Miss Bardzik brought suit against the lamp company, the defence of which

was conducted by the insurance company, and resulted in a verdict for $6,000.

The facts show, and it is admitted by the counsel of the insurance company, that if the lamp company had paid Miss Bardzik this judgment, a cause of action at common law would have arisen at once in its favor against the insurance company. What actually occurred was this: on the day that judgment was entered, and before execution was levied, the lamp company was thrown into bankruptcy on the petition of one of its creditors, and enjoined from paying Miss Bardzik, and she was enjoined from enforcing her judgment against it. The complainant Moses was duly appointed trustee in bankruptcy.

This state of facts seems to me to clearly place the three parties to this suit in the relations toward each other which the complainant and Miss Bardzik claim that they occupy. As between Miss Bardzik and the lamp company, and without regard to the policy of insurance, the lamp company is the debtor, and Miss Bardzik is the creditor; and they bear the same relation to each other that the owner of land, who has given a bond and mortgage, does to the holder of the mortgage; but when we introduce the element of the policy of insurance given by the insurance company, the situation of the parties is, in equity, changed, precisely as it is in the case where the giver of a bond and mortgage conveys the land and the grantee assumes the payment of the bond and mortgage as a part of the consideration money. At once, in such a case, in the view of a court of equity, as between the grantor and grantee of the land, the grantee becomes the principal debtor to the holder of the bond and mortgage, and the bondsman and mortgagor becomes surety for the grantee; and that change of relationship enures to the benefit of the mortgagee. He may still treat his bondsman as his debtor, and sue him at law, or he may treat him as a surety and claim through that relation the benefit of the covenant of the grantee to pay the debt; and this he may do notwithstanding the insolvency of the mortgagor. All that was expressly decided in *Klapworth* v. *Dressler, supra.*

The demurrers are both general for want of equity, and set up no special causes.

No objection was made in the demurrer, or at the argument to the cross-bill that it could not be properly joined in an answer to the original bill.

The grounds relied upon as against the bill of the lamp company and its trustee, are—

*First.* That independent of the special condition above set forth, the contract is one of indemnity merely, and until the complainant pays the judgment it cannot be said to be damaged.

But I think this position cannot be maintained as against the long line of authorities already cited.

*Second.* That the lamp company, being insolvent, its trustee will, possibly and probably, be compelled to pay only a dividend on the judgment of Miss Bardzik, and the insurance company is liable for such sum only as will be so paid by it.

It is not necessary at this stage of the proceeding to determine the extent of the liability of the insurance company so far as the complainant is concerned, and hence, as was held by Chancellor Kent in *Champion* v. *Brown, supra,* it is no cause of demurrer. The bill of the lamp company and its trustee is in the nature of a bill for specific performance to establish the liability of the insurance company, and to compel it to perform its contract to indemnify the lamp company as fast as it shall suffer loss. *1 Story Eq. Jur.* § *730.* This is the most favorable aspect of it for the insurance company.

But it is proper here to remark that if the defendant's contention in this behalf is correct it will produce some curious results. If after paying the expenses of managing and winding up the bankrupt estate there remain no assets from which the trustee can make a dividend, then the insurance company will, on the theory of its counsel, be absolved from all liability. Such a result does not commend itself to a court of equity.

Again: if on the winding up of the bankrupt's estate a dividend of, say, fifty cents on the dollar be paid, and Miss Bardzik thereby receives from the trustee $3,000 on her judgment, then the trustee will have a cause of action against the insurance company for that amount. And, supposing the insurance company pays it, what will the trustee do with it? Must he divide it equally among all the creditors, or must he pay it to

Miss Bardzik? If the latter, then the insurance company will again become liable to pay at least $2,000 more. If, however, the $3,000 paid in the supposed case by the insurance company to the trustee becomes a new fund to be distributed among all the creditors, then Miss Bardzik will be entitled to another dividend out of it, and upon payment of that second dividend to her a second liability will arise against the insurance company and in favor of the trustee, and another dividend will follow its payment, and so on *ad infinitum.*

This objection, viz., that the measure of obligation is the actual amount paid by the lamp company to Miss Bardzik, does not, at this moment, seem to me to apply to Miss Bardzik's cross-bill. If she is entitled to recover anything it seems to me it is the whole $5,000.

The principal point, however, made by the insurance company against the complainant's bill, is based upon the severe language found in the condition above recited:

"No action shall lie against the company as respects any loss under this policy unless it shall be brought by the assured himself to reimburse him for loss actually sustained and paid by him in satisfaction of a judgment after trial of the issue."

This language, when strictly construed, does certainly go a long way toward sustaining the defendant's position. But the effects ascribed to it by counsel are so contrary to the manifest right and justice of the case that the court will not adopt such construction unless clearly compelled thereto.

Counsel of complainant and for Miss Bardzik contend, first, that the complainant's bill in equity is not such an action as is forbidden by the clause; that an action at law is there contemplated resulting in a peremptory judgment for a fixed sum, and that the clause was intended to protect against actions at law being brought before the liability of the insured to the injured party was established by a judgment, and to avoid such actions as *Sparkman* v. *Gove, 15 Vr. 252,* and *Hoppaugh* v. *McGrath, 24 Vr. 81;* and further, that this suit is not based, strictly speaking, on the contract, but rather on the complainant's equity arising out of the facts of the case, as stated by

Chancellor Kent in *King* v. *Baldwin, 2 Johns. Ch.* (at *p. 554*), and by Mr. Justice Depue in *Railroad Co.* v. *Little, 14 Stew. Eq. 521,* and again, by Chancellor McGill, in *Kidd* v. *Hurley, 9 Dick. Ch. Rep.* (at *p. 180*).

Now, although it is well settled that at law the ordinary contract of insurance is treated as a direct one between the parties, leading to the relation of debtor and creditor, yet this particular form of contract leads to the relation of principal and surety. The real creditor is Miss Bardzik, and the real debtor is the insurance company, and the insured named in the contract—the lamp company—occupies the position of a mere surety. This, as we have seen, is the foundation of the equity in *Klapworth* v. *Dressler, supra,* and the line of cases which follow it. Hence, it is argued, the right of the complainant is based upon that relation, and not on contract. In fact, the action is one for the specific performance of the contract by the insurance company to indemnify the complainant, and such actions are so classed by the commentators. Hence, it is argued, the case appears from an equitable standpoint precisely as if there were no contractual relations between the insurance company and the lamp company, and the attitude of principal and surety between those parties arose, as well it might and often does arise, out of the bare facts. I am inclined to think this view is sound. Giving the clause in question its strictest construction, it yet seems to me that a chancellor will not permit it to stay his hand in enforcing a plain equity.

But the complainant takes the further position that where, as here, the complainant is prevented by the superior power of an injunction issued by a court of common jurisdiction from making the payment to Miss Bardzik as a condition precedent to an action at law, such prevention operates as a dispensation to it of the necessity to make such payment, where, as here, such failure to pay works no injury to the insurance company which is visible to the eye of a chancellor.

Thus, but for the restraint of the federal court, the complainant could, in the absence of funds in hand, borrow $5,000 on the strength of a temporary assignment of the policy, with which to pay Miss Bardzik, and with her receipt in his hands at once

be entitled at law to sue. And yet such a formal proceeding would not affect the substantial rights and justice of the case.

It is manifest, counsel for the complainant contends, that the present situation was not in the minds of the parties when the contract was made, and the rule is that a party is held to perform an act that proves to be unlawful or impossible only when it appears that he was aware of such illegality or impossibility at the time he contracted. And the argument is that the performance of a condition precedent which afterwards becomes impossible comes within the letter and spirit of that rule.

The policy of insurance in this case is dated February 20th, 1897. Miss Bardzik's injury occurred on January 12th, 1898. The federal Bankrupt act was passed July 1st, 1898, after both the issuing of the policy and the injury suffered by Miss Bardzik, so that the restrictions to which the lamp company might be subjected by the operation of the Bankrupt act could not have been in the minds of the contracting parties, and the lamp company cannot be presumed to have supposed that its ability to perform a condition precedent would become lawful.

I think the present case is within the rule invoked by complainant. It has been held that it extends so far as to relieve a plaintiff from the performance of a condition which, by the contract, is precedent to a right to recover. *Jones v. Judd, 4 Comst. 411; Heine v. Meyer, 61 N. Y. 171;* and see the instructive case of *Baily v. De Crespigny, L. R 4 Q. B. 180 (1869).* In those cases a contractor was prevented from performing his contract by legislation subsequent to making it, which rendered it unlawful for him to proceed further in carrying it out, and it was held that he was excused thereby from completing, and entitled to recover.

The present case is distinguishable from that class of cases of which *Croockewit v. Fletcher, 1 Hurlst. & N. 893,* is a sample, where the performance of the condition precedent forms or enters into the very consideration of the contract. For instance, where, as in that case, the condition is that a ship shall sail on a certain day, or that a horse purchased shall be delivered at a certain time. There time is of the essence of the contract, and the purchaser may refuse to accept at a later day. Non-per-

formance at the time and in the manner named in the contract cannot be excused by illegality or impossibility in the performance. In contrast with this line of cases are those of the procuration, by a contractor for the erection of a building, of the architect's certificate that the building has been finished, which certificate is required by the contract as a condition precedent to his right to payment. The modern rule, as I understand it, is that if the contractor has actually done the work according to his contract, both as to time and manner, the fact that he is unable for any cause for which he is not personally responsible to procure the architect's certificate, will not defeat his right to a recovery. The production of such certificate does not enter into the actual consideration, and does not affect the question whether the work is in fact done and finished according to the contract. It is treated as a mere method of proof.

In the present case the real consideration of the contract is the premium paid by the lamp company to the insurance company. The real and only meritorious condition precedent of the liability to payment is the suffering of injury by the employe, and the recovery of judgment therefor after the test of a trial by jury, in which the insurance company shall have the opportunity to conduct the defence. All these have taken place. The actual payment of the money by the defendant in the judgment to the injured employe has in it nothing meritorious, and does not touch the real consideration of the contract.

So much for the right of the complainant to maintain its bill.

As to the cross-bill, I think the objections raised have less force, if possible, than as against the complainant. Miss Bardzik has a claim against the lamp company based upon her judgment. Under the peculiar circumstances of the case that is really the debt of the insurance company, and on the principles previously stated she is entitled to have the benefit of the insurance company's covenant, notwithstanding the insolvency, and her inability to realize her judgment against the lamp company. As between her and the insurance company, the question of the amount by which the assets of the lamp company would be diminished by her claim is immaterial, or, rather, that amount will be presumed to be the amount of her judgment, and conse-

.quently she is entitled to a decree for the whole $5,000, with interest from the date of her judgment.

I will advise that the demurrers be overruled, upon the usual terms.