187 So.2d 349 (1966)
OLIN'S RENT-A-CAR SYSTEM, INC., Appellant,
v.
ROYAL CONTINENTAL HOTELS, INC., Appellee.
No. 72.
District Court of Appeal of Florida. Fourth District.
May 27, 1966.
Rehearing Denied June 27, 1966.
*350 Fred Patrox, Miami, for appellant.
Fred C. Davant of Wicker, Smith, Blomqvist, Hinckley & Davant, Miami, for appellee.
BARNS, PAUL D., Associate Judge.
The appellant-defendant (Olin's Rent-A-Car System, Inc.) is a defendant in an action at law brought by the appellee-plaintiff (Royal Continental Hotels, Inc.) seeking indemnity from the appellant-defendant by reason of a prior judgment suffered by the hotel company in an action brought against it by an invitee of the hotel for the negligence of Olin, its licensee, doing business in car-rentals, car-parking services, etc., at the hotel's main entrance and serving as the hotel's doorman. From a summary final judgment entered on motion of the plaintiff, after answer, the defendant-Olin appealed. We affirm.
A prior action was brought against the hotel company by Mr. and Mrs. McCreedy resulting in a judgment against the hotel, which judgment was paid in full by the hotel company. That action was grounded on the facts that Mrs. McCreedy went to the hotel as an invitee, stopped her car at the entrance and turned it over to the doorman for parking. The doorman was at his podium or stand where she obtained a claim check from him. Upon leaving the stand, she started toward the entrance of the hotel and tripped over a telephone extension line running from the wall of the hotel to the doorman's stand and was seriously injured. The telephone and stand were installed by Olin and were in its possession for its use only.
The appellant-defendant's assignment of error relied on for reversal is that the lower court erred in granting appellee-plaintiff hotel company's motion for summary judgment, and in its brief it raises the point as to whether Olin is obligated to indemnify the hotel for damages suffered by the hotel by being required to pay the McCreedy judgment.
The appellant-defendant was not a party defendant to the McCreedy suit against the *351 hotel but was advised of the pendency of the action and that, in the event the hotel was liable to McCreedy, then in turn Olin would be liable to the hotel company for the McCreedy claim since it was based on the negligence of Olin. Olin was requested by the attorney for the hotel to come in and defend the claim of McCreedy against it and warned that the hotel company would proceed against Olin for indemnification in the event Olin failed to save it harmless from the McCreedy claim.

INDEMNITY  "VOUCHING IN" THIRD PARTY  AT COMMON LAW
The right of a person first sued to "vouch in" a person liable to him has been stated as follows: "* * * when a person is responsible over to another, either by operation of law or by express contract * * * and he is duly notified of the pendency of the suit, and requested to take upon him the defense of it, he is no longer regarded as a stranger, because he has the right to appear and defend the action, and has the same means and advantages of controverting the claim as if he was the real and nominal party upon the record. In every such case, if due notice is given to such person, the judgment, if obtained without fraud or collusion * * * will be conclusive against him, whether he has appeared or not * * *." Littleton v. Richardson, 1856, 34 N.H. 179, 66 Am.Dec. 759, 760.
The foregoing rule of law is applicable by the party first sued in an action against the party "vouched in" when the liability of the vouchee to the voucher is the same as the liability of the voucher-defendant to the plaintiff to the action. Hoppaugh v. McGrath, 1890, 53 N.J.L. 81, 21 A. 106 (leading case); Hessler v. Hillwood Manufacturing Company, 6th Cir.1962, 302 F.2d 61 (involving merchant's right to vouch in the manufacturer of a defective nail); United States Wire & Cable Corp. v. Ascher Corporation, 1961, 34 N.J. 121, 167 A.2d 633 (involving right of seller of wire to vouch in manufacturer of wire); Karas v. Snell, 1957, 11 Ill.2d 233, 142 N.E.2d 46 (involving judgment creditor's right against judgment debtor's indemnitor); Pace v. Pace, 1959, 9 A.D.2d 755, 193 N.Y.S.2d 119; Southern Railway Company v. Acme Fast Freight, Inc., 1942, 193 Ga. 598, 19 S.E.2d 286, 140 A.L.R. 1118; Restatement, Judgments, § 107, Comment e, p. 515; 27 Am. Jur., Indemnity, § 35.
The procedural operation of "vouching to warranty" is well stated in 3 Moore's Federal Practice, 2nd Ed. (1963) § 14.02[1], p. 431, as follows:
"Although impleader is a relatively recent procedural device in many American jurisdictions, its roots go deep in the common law. They strike the procedural device known as `vouching to warranty.' Thus assume that Y sold land to X with a warranty of title, that A, a stranger, now sues X to recover the land. X could vouch Y in as a warrantor and request, or offer an opportunity to, Y to defend A's action against him. If A recovered, X, however, was obliged to bring an independent action against Y to recover on the warranty. But whether or not Y availed himself of X's request to come in and defend he was bound by the outcome of A's action against X, and in X's action against Y, X need prove only the notice or request, the judgment, and Y's warranty to him. Vouching to warranty applied also to chattels. And the underlying theory has been extended generally to cover all claims for indemnity, express or implied-in-law. But two actions instead of one are necessary in cases where the voucher is held and the vouchee refuses to indemnify him. Third-party practice does not supplant the device of vouching in a party. * * *" (Emphasis supplied.)
It seems that the practice originated in personal property law and was later adopted to real property law. Glanvill wrote in the Twelfth Century; Digby's History of the *352 Law of Real Property, (5th Ed.), note page 80, quotes from Glanvill as follows:
"The doctrine of warranty was based upon one of the most primitive of the rules of early Teutonic law. (Warranty=the Anglo-Saxon `Term') When a person has been wrongfully deprived of a portion of his property  a slave, a horse, or an ox  and found it in the possession of another, the true owner could of course claim that which was his own. If the person having the thing in his possession had bought it from a third person, he could vouch the third person to warranty, that is, call upon him to defend the title to the chattel, and, if the superior title were established, to make recompense to the evicted possessor. If the warranty was not accepted, the person vouching to warranty must establish that he purchased from the person vouched (and for this purpose the Anglo-Saxon laws contain elaborate provisions as to the necessity of a purchaser providing witnesses of the purchase), and the identity of the thing purchased with that claimed. (See Laws of Hlothaere and Edric, 7, 16, Thorpe, Ancient Laws and Institutes, fol. ed., pp. 13, 14; Laws of Inc, 75 Thorpe, p. 65). The person vouched to warranty might in his turn vouch a second person, and the second vouchee a third, but no further vouching was permitted. (See Leg.Long. Lib 2, tit. 28.1.5, Canciani, i.p. 232; Laws of Ethelred, 8, 9, Thorpe, p. 123.) Upon the acceptance of the warrantor the suit as to the title to the chattel proceeded between the claimant and the warrantor, and if the claimant was successful he recovered the chattel, and the warrantor was bound to recompense his vendee. If at the time of the claim the vouchee were dead, the possessor of the thing claimed could `"vouch the tomb"' of the vendor, and follow his property wherever it were for the purpose of obtaining a recompense * * *."
For the historical origin and development of Voucher, see Robert A. Christensen's note, "Does Voucher to Warranty Belong in UCC?", 18 Stanford Law Review 666 (Feb. 1966).
The appellee, Royal Continental Hotels, Inc., was compelled to pay damages on account of the negligent and tortious act of Olin's employees, and for this reason, properly had a right of action against Olin's for indemnification because of the damages paid and expenses incurred in defense of the suit brought by the McCreedys against Royal Continental Hotels.
In 42 C.J.S. Indemnity § 21, we find the following:
"It is a well-recognized rule that an implied contract of indemnity arises in favor of a person who without any fault on his part is exposed to liability and compelled to pay damages on account of the negligent or tortious act of another, the former having a right of action against the latter for indemnity, provided they are not joint tort feasors. * * * This right of indemnity is based on the principle that everyone is responsible for his own negligence, and if another person has been compelled by the judgment of a court having jurisdiction to pay the damages which ought to have been paid by the wrongdoer, they may be recovered from him. * * *"
There is no dispute that Royal Continental owned the hotel area where Olin's carried on its rental car concession; likewise, there is no dispute that the employees of Olin's were in direct control of the area and that their active negligence caused the injury. There is, further, no dispute that Royal Continental was only vicariously liable because of its ownership of the premises involved.
The appellant-defendant was in possession under an agreement; it was operating pursuant to this agreement, and therefore, was responsible for the wrongdoings of its officers, agents and servants. At 42 C.J.S. Indemnity § 21, the law regarding the obligation of an independent contractor is stated:
"* * * Similarly an independent contractor guilty of wrongdoing is liable, *353 not only to the person injured, but to any other person who is legally liable therefor; and indemnity may be recovered by a contractor who, without any fault on his part, is compelled to pay for injuries caused by the negligence or wrongful act of a subcontractor."
At 27 Am.Jur., Indemnity, § 18, we find the following:
"Accordingly, it has been stated that a person who, without fault on his own part, has been compelled to pay damages occasioned by the primary negligence of another is entitled to indemnity from the latter, whether contractual relations exist between them or not. In this connection it has been observed that where one does the act or creates the nuisance, and the other does not join therein, but is thereby exposed to liability and suffers damage, the rule denying contribution or indemnity between joint tort-feasors does not apply, the parties not being in pari delicto as to each other, though either may be held liable as to third person."
The last sentence quoted above is directly on point in this instance. The appellant-defendant had in its possession, control and operation certain facilities owned by the appellee-plaintiff. In the operation and control of these facilities, the appellant caused damage to Mrs. McCreedy; Mrs. McCreedy sued and secured a judgment against the appellee. Under the common law doctrine of indemnity, the appellee is entitled to be reimbursed for its damages incurred because of the acts of the agents of appellant.
In the case of Fincher Motor Sales, Inc. v. Lakin, Fla.App. 1963, 156 So.2d 672, an action was brought by an automobile owner against the estate of a deceased driver for the amount paid out by the owner as a result of a judgment obtained against it pursuant to a collision in which the driver was involved. The Circuit Court for Dade County dismissed this suit. However, the District Court of Appeal, Third District, reversed and remanded, holding that the owner's liability for the acts of the driver was vicarious and that the estate of the driver, Lakin, was liable for the damages caused by the driver, because the owner and the driver were not in pari delicto as to each other. See also Morse Auto Rentals, Inc. v. Lewis, Fla.App. 1964, 161 So.2d 235.
The Fincher case, supra, is directly on point. A portion of the hotel in the instant case, as compared with a car in the Fincher case, was in the possession of the appellant, and the acts of the appellant caused the appellee to incur damages.
The court, in the Fincher case, supra, quoted with approval 7 Fla.Jur., Contribution, § 8, as follows:
"The rule denying contribution between joint tortfeasors is generally limited to cases in which the parties as between themselves stand in pari delicto. In cases where although both parties are at fault and both liable to the person injured they are not in pari delicto as to each other, as where an injury results from a violation of the duty which one tortfeasor owes to the other and the latter has been compelled to pay for the injury, the one so paying may recover from the person primarily liable. In such cases, there exists more than the mere right of contribution, and the claimant is usually permitted to indemnify himself to the full amount against the party primarily liable, as between them, for the tortious act."
The appellant, as authority for its position, has cited the cases of Great Atlantic & Pacific Tea Company v. Federal Detective Agency, Fla.App. 1963, 157 So.2d 148, and Winn-Dixie Stores, Inc. v. Fellows, Fla. App. 1963, 153 So.2d 45. Both of these cases are bottomed upon the factual situation that the appellant and appellee were in pari delicto and, therefore, were joint tort-feasors thereby precluding any contribution one to the other.
Affirmed.
SMITH, C.J., and ANDREWS, J., concur.